499 A.2d 511

**Jeffrey Douglas JONES**

v.

**STATE of Maryland.**

**No. 262, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 7, 1985.

William H. Murphy, Jr. (Lecia M. Eason, on brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty. for Harford County, Jay E. Robinson and Charles Burton Frey, Asst. State's Attys. for Harford County on brief, Bel Air), for appellee.

Argued before GILBERT, C.J., and WEANT, and BLOOM, JJ.

GILBERT, Chief Judge.

Jeffrey Douglas Jones, then a trooper in the Maryland State Police, was convicted by a jury in the Circuit Court for Harford County of a third degree sexual offense, assault and battery, and two counts of misconduct in office.

During the course of the trial, the prosecution sought to introduce certain evidence which it characterized as an exception to the hearsay rule. That evidence was the testimony of Trooper First Class William Byrd that at or about the time of the incident involving Jones was alleged to have occurred, Byrd heard two "truckers" talking on the CB radio frequency. Byrd did not know the identity of either "trucker," nor was any effort ever made to locate one or the other. Despite the fact that Byrd was unable to say that the conversation he overheard concerned Jones, he was allowed to testify as to the content of that broadcast. In permitting the testimony of Byrd, the trial judge opined:

"[I]f the State chooses to let this evidence in, and if there's a conviction, you're inviting—we are all inviting reversal, but I think that there's much to be said on either side of the case.... I think this is one of the odd cases not covered by ... one of the usual pigeonhole situations and that it's got sufficient reliability to go to the jury, but I could very well be held to be wrong and if the State wants to put in, they do so at their ... [appellate] peril."

We agree that reversal was invited, and we reverse. We now explain why.

### The Facts

While travelling south on Interstate 95 on October 15, 1983, Mrs. Odessa King was stopped by Trooper Jones. Jones informed Mrs. King that she did not have a tag light on her vehicle. He requested to see her license and automobile registration card. King told Jones that she only had a New Jersey learner's permit, but that her passenger, Willie Hooks, was a licensed driver in New York, and the car was registered in Hook's name. After some discussion, Jones instructed Mrs. King to accompany him to the police car. Mrs. King testified that she followed Jones to his car where, after a conversation regarding the amount of the fine involved, he handcuffed her, unzipped her pants and inserted one of his fingers into her vagina. As a result of Mrs. King's protestation, Jones uncuffed her and told her she was free to leave. Mrs. King told the jurors that as soon as she alit from Jones' car, he turned off the vehicle's lights and sped away. Mrs. King and Hooks pursued him in their own car, but they were unable to catch Jones. After abandoning the chase, Mrs. King reported the incident to the police and identified Jones as the culprit. Seemingly to bolster Mrs. King's testimony, the State produced Tfc. William Byrd. Byrd, over strenuous objection, testified that shortly before he received a radio report about the King incident, he overheard two CB radio broadcasters describing a chase of a "Smokey Bear" by a small car.

When asked to repeat exactly what he heard, Byrd responded:

> "On the CB radio in the state police car, Channel 19, I overheard a trucker on the CB said that it was Smokey the Bear southbound in a police car with no lights on and right after that another trucker on Channel 19 advised that there was a little car just took off behind Smokey the Bear trying to catch him at a high rate of speed."

Byrd said that Channel 19 was a "trucker's channel,"[1] and that "Smokey Bear" meant "the State Police."[2]

### The Issue

The question before us is not whether Byrd's testimony was hearsay, but rather whether it was admissible as an exception to the hearsay rule.

### The Law

Generally speaking, the hearsay rule proscribes the use of testimony unless the declarant is open to cross-examination or there is an opportunity for cross-examination. 5 Wigmore, *Evidence* § 1362 (Chadbourn rev. 1974).

As with all general rules, the hearsay rule is not without its exceptions—statements or records that experience has taught should be admissible because of their attendant reliability or trustworthiness. Included in the almost innumerable categories of exceptions are: dying declarations, statements against interest, statements of family history and pedigree, entries in the normal course of business, spontaneous exclamations under excitement, attesting witnesses' statements, statements of present sense impression,

---

1. There is no evidence that the alleged CB broadcasters were "truckers." Byrd apparently inferred that they were because Channel 19 is, according to him, a "trucker's channel."

2. Byrd said that "truckers" call county police officers "County Mounties," while city law enforcement officers are referred to as "City Kiddies."

statements of physical sensation and mental condition. *See* 5 Wigmore, *Evidence* § 1426 (Chadbourn rev. 1974).

Although the State prosecutor, with hubris, endeavored to justify the admission of Byrd's testimony as falling within the present sense impression exception, it clearly does not fit that mold.

■ The present sense impression exception is the name given to unexcited statements about events occurring in the presence of the declarant which he or she is then contemporaneously relating to another. *See McCormick on Evidence* § 298 (3d ed. 1984). Such testimony is admitted because, according to *McCormick,* three safeguards are present which assure its reliability. Those safeguards are:

"First, since the report concerns observations being made at the time of the statement it is safe from any error caused by a defect of the declarant's memory. Second, a requirement that the statement be made contemporaneously with the observation means that there will be little or no time for calculated misstatement. Third, the statement will usually have been made to a third person (the witness who subsequently testifies to it) who, being present at the time and scene of the observation, will probably have an opportunity to observe the situation himself and thus provide a check on the accuracy of the declarant's statement, i.e. furnish corroboration. Moreover, since the declarant himself will often be available for cross-examination, his credibility will be subject to substantial verification before the trier of fact." (Footnotes omitted.)

*See also Booth v. State,* 62 Md.App. 26, 35–36, 488 A.2d 195, 200, *cert. granted,* 303 Md. 297, 493 A.2d 351 (1985).

■ Plainly, the testimony of Byrd does not satisfy *McCormick*'s third factor, even if it can be conceded that the first two factors are satisfied. The "truckers'" statements on the CB radio were made to each other and not to Tfc. Byrd. Neither of the "truckers" was available to testify, so the opportunity to check on the accuracy of the

statement is totally lost. All that is left to examine in the instant case is the memory of the trooper and what he supposedly heard over his radio.

A practical difficulty with allowing evidence of the type Byrd presented is that no one is able to verify the accuracy of the "truckers'" observations. No one actually knows that the CB radio conversation was between "truckers" or that it was on Interstate 95, or that it involved Trooper Jones and Mrs. King. Additionally, Jones was not afforded any opportunity to test the reliability or accuracy of the declarant's observations.

In *Booth v. State*, 62 Md.App. 26, 488 A.2d 195, *cert. granted*, 303 Md. 297, 493 A.2d 351 (1985), we permitted the admission of certain evidence as a present sense impression exception to the hearsay rule. There a witness was allowed to testify that she had a telephone conversation with the decedent shortly before his death. The decedent told her that a young woman named Brenda was in his apartment. The witness also testified that during their conversation she could hear a female voice in the background. In examining the trustworthiness of that testimony, we noted that the witness could verify the presence of a woman in the decedent's apartment at a time shortly before his death, and that the witness was available for cross-examination.

The State relies heavily on *Booth*, but we think it inapposite. We so think because in *Booth:* 1) the identity of the declarant was known to the witness who testified; 2) the conversation was with the witness and not merely overheard by a third party who testified; and 3) the person to whom the declarant spoke was available for cross-examination as to her credibility and as to the accuracy of her narration. None of those elements are present in the instant case.

We believe that the testimony of Byrd falls well short of that in *Booth*. It does not fit within any of the exceptions recognized in this State and should not have been received into evidence. To permit evidence such as that of Byrd

would throw open the door to imaginative, if not fabricated, present sense declarations between unknowns. Cross-examination of those witnesses is almost guaranteed to test absolutely nothing.

We recognize that Federal Rule of Evidence 803(24) would permit the introduction of evidence such as that of Tfc. Byrd, provided there were sufficient indicia of reliability. This State, however, has not adopted the Federal Rule of Evidence 803(24), and we expressly do not do so here. *See Cain v. State,* 63 Md.App. 227, 492 A.2d 652 (1985).

We hold that the admission of Tfc. Byrd's testimony relative to the "truckers'" conversation on the CB radio was reversible error. In light of our holding, we do not reach the other issues presented by Jones.

JUDGMENTS REVERSED.

CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY HARFORD COUNTY.