532 A.2d 169

**STATE of Maryland**

v.

**Jeffrey Douglas JONES.**

**No. 33, Sept. Term, 1986.**

Court of Appeals of Maryland.

Oct. 29, 1987.

24

---

Valerie Smith, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellant.

William H. Murphy, Jr., Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH*, McAULIFFE, and SMITH (retired, Specially Assigned), JJ.

---

\* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

McAULIFFE, Judge.

A motorist testified that she had been sexually assaulted by a state trooper who stopped her for operating a vehicle without a tail light. The state trooper adamantly denied the charge. The deciding factor in the resolution of this dispute may well have been the hearsay statements of two unknown individuals heard over channel 19 of a citizens band radio. Our task is to decide whether the trial judge erred in admitting evidence of the statements.

At about 11 p.m. on October 15, 1983, Trooper First Class Jeffrey Jones of the Maryland State Police stopped a southbound 1972 Ford Pinto on Interstate Route 95, north of the Maryland House rest stop in Harford County. The stop was made because Trooper Jones could not determine whether the vehicle was displaying a rear license plate—a condition, it later turned out, that was caused by a short circuit in the tag light.

It is undisputed that Trooper Jones spoke with the female operator of the Pinto, and with her male friend, Willie Hooks, who was the owner of the vehicle and seated in the front passenger seat, and that at some point in time the female was seated in the trooper's cruiser. Why she entered the police cruiser, and what happened while she was there and shortly thereafter are facts sharply in dispute.

The complainant testified that Jones directed her to enter the cruiser to discuss his contention that she was operating in violation of the conditions of her New Jersey learner's permit. She said Jones told her she could drive only if accompanied by a New Jersey licensed driver, and because Hooks was licensed only in New York she was violating the law. She further related that Jones then said he would have to search her, and after handcuffing her put his hands in her pockets, unbuckled her belt, unzipped her jeans and pulled them down, and accomplished digital penetration after placing his hand under her panties. When she protested, he released her and she returned to the Pinto. She instructed Hooks, who was now behind the wheel, to obtain

the trooper's tag number. At that point, however, the police cruiser left at a high rate of speed and without lights. Hooks gave chase, having observed that the complainant's belt buckle was loose and her jeans unzipped, and having learned from her that the officer "messed with her." According to the complainant and Hooks, their Pinto was no match for the police cruiser, and although they achieved speeds up to 70–80 miles per hour as they passed the Maryland House, they were never able to catch up to the cruiser. They then stopped at the first roadside emergency phone and reported the incident to the police. According to the complainant, she did not receive a summons or a warning ticket from Jones.

Jones testified that the complainant approached and entered his cruiser on her own initiative, while he was writing a warning ticket. He said she became upset when he explained that Hooks would have to drive the Pinto. He denied any physical contact with her, except to return her permit and to hand her a warning ticket.[1] Concerning his departure from the scene, Jones said he followed the Pinto into traffic and eventually passed it. He denied operating his vehicle without headlights.

Officer Kenneth Kinesman of the Maryland Toll Facility Police testified that at 11:30 p.m. on the night in question, he was dispatched to an emergency call box on the Harbor Tunnel Thruway, where he met the complainant and Hooks. He described the complainant as agitated, distraught, excited, and upset, and related her complaint that she had been "assaulted by a cop" on Interstate 95, north of the Maryland House. Officer Kinesman confirmed that the emergency call box used by the complainant was the first one available to southbound traffic after passing the Maryland House.

---

1. During the course of a subsequent investigation, Jones produced a copy of the warning ticket he said he issued to the complainant. The ticket was not signed by Jones or the complainant, an omission that Jones said represented an oversight on his part.

The evidence in controversy is that given by Trooper First Class William Byrd. It involves CB radio transmissions that Trooper Byrd said he heard while in his police cruiser at the Maryland House on the night in question, at some time between 11:00 and 11:30 p.m. To determine admissibility of the proffered evidence, Judge Brodnax Cameron, Jr. conducted a hearing out of the presence of the jury. At the hearing, Trooper Byrd testified he was monitoring channel 19 when he heard consecutive radio transmissions by persons he assumed were truckers. The two transmissions were:

> 1st Speaker: Look at Smokey Bear southbound with no lights on at a high rate of speed.

> 2nd Speaker: Look at that little car trying to catch up with him.

Trooper Byrd explained that among truckers and other citizens band radio aficionados "Smokey Bear" means a state trooper.[2] Judge Cameron admitted the testimony, acknowledging that it was hearsay, but holding it was admissible under the present sense impression exception to the hearsay rule.[3] Jones was convicted of a third degree sexual offense, battery, and misconduct in office. He was given a sentence of two years imprisonment, of which 90 days was to be served and the balance suspended. He appealed, and the Court of Special Appeals reversed, *Jones v. State*, 65 Md.App. 121, 499 A.2d 511 (1985). Shortly thereafter, we decided *Booth v. State*, 306 Md. 313, 508

---

**2.** The nickname is apparently derived from the similarity of the uniform hats worn by many state troopers and the hat worn by Smokey the Bear of forest fire prevention fame. Trooper Byrd also explained that in the vernacular of CB radio users a county officer is known as a "county mountie" and a city officer as a "city kitty."

**3.** Judge Cameron noted in passing that the "man-bites-dog" character of a small civilian car chasing after a police car operating without headlights was the kind of startling event normally associated with the excited utterance exception to the hearsay rule. His holding, however, was grounded on the present sense impression exception, there being no evidence that the declarants spoke under the influence of excitement.

**28**

A.2d 976 (1986), discussing and approving the present sense impression exception to the hearsay rule. We granted certiorari in this case to consider the admissibility of the evidence in the light of *Booth*.

The principal reasons assigned by the Court of Special Appeals for the rejection of the evidence were the absence of an equally percipient witness to furnish corroboration and the absence of evidence sufficient to show the relevance of the statements. We address separately these and the other issues generated by this appeal.

### Variance In Testimony

At a bench conference requested by Respondent's counsel as Trooper Byrd was being called to the stand, the trial judge was informed that the State would attempt to elicit testimony concerning the statements heard on the CB radio. Respondent's counsel objected to any reference being made to the statements in the presence of the jury, and Judge Cameron agreed to excuse the jury when the testimony of Trooper Byrd reached that point. Consistent with this understanding, Trooper Byrd's initial testimony concerning the statements was given out of the presence of the jury. Following that testimony, and following argument by both counsel, Judge Cameron ruled the statements admissible, and the jury was recalled. As Jones points out, Trooper Byrd's testimony before the jury differed in some respects from that given before the judge. In first describing the statements he heard, Trooper Byrd cast them in the language of each declarant: "Look at Smokey Bear southbound with no lights on at a high rate of speed." "Look at that little car trying to catch up with him." Before the jury, Trooper Byrd cast his testimony in the narrative form:

> On the CB radio in the state police car, Channel 19, I overheard a trucker on the CB said [sic] that it was Smokey the Bear southbound in a police car with no lights on and right after that ... another trucker on Channel 19 advised that there was a little car just took

off behind Smokey the Bear trying to catch him at a high rate of speed.

Because the content of a statement may contain the requisite evidence of spontaneity, or of the fact that the statement is the product of personal perception by the declarant, *Booth, supra,* 306 Md. at 330, 508 A.2d 976, the wording of the statement may be important. Here, the statements in the form first related by Trooper Byrd are self-evidently spontaneous. However, the statements as related to the jury, at least when standing alone, give rise to questions concerning their spontaneity.[4]

The record discloses that Judge Cameron ruled on the admissibility of the statements based upon the initial testimony of Trooper Byrd. After the jury was recalled, and Trooper Byrd was asked to recount what he had heard, Respondent's counsel interposed a timely objection. However, counsel did not make any additional objection, or move to strike the answer, when Trooper Byrd gave what Respondent now suggests was a different version of the statements. Thus, Judge Cameron was given an opportunity to rule only on the basis of the testimony presented to him. He was never given an opportunity to determine whether the change in language would affect his ruling on admissibility. Nor was the prosecutor given an opportunity to inquire through further questioning whether the change in language reflected simply a different method of presenting the same information, or represented a change in Trooper Byrd's recollection of what had occurred. Although Respondent's counsel has fully preserved for review the question of admissibility based upon the testimony given at the hearing, he has not preserved any question concerning

---

**4.** The State suggests that the second declarant's reference to the fact that "a little car *just* took off" furnishes sufficient evidence that the speaker was describing something almost immediately after he observed it, and that because of the content and chronology of the two statements, a finding that the second statement was essentially contemporaneous with the occurrence necessarily implies a similar finding for the first statement. We need not address that contention.

the possible legal effect of the change in words used to recount the statements.

## Contemporaneousness

In *Booth v. State, supra,* 306 Md. at 324, 508 A.2d 976, we discussed the requirement that a statement of present sense impression be essentially contemporaneous with the event it describes:

> [B]ecause the presumed reliability of a statement of present sense impression flows from the fact of spontaneity, the time interval between observation and utterance must be very short. The appropriate inquiry is whether, considering the surrounding circumstances, sufficient time elapsed to have permitted reflective thought. *See McCormick on Evidence* § 298, at 862 (3d ed. E. Cleary 1984). In the words of Professor Jon Waltz, "absent some special corroborative circumstance, there should be no delay beyond an acceptable hiatus between perception and the cerebellum's construction of an uncalculated verbal description." Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes,* 66 Iowa L.Rev. 869, 880 (1981).

We also held that in some instances the content of the statement may furnish sufficient evidence of its spontaneity. *Id.* at 330–31, 508 A.2d 976. As conceded by Respondent's counsel at oral argument, the statements as related by Trooper Byrd to Judge Cameron are "self-evidently contemporaneous." [5]

## *Personal Knowledge—Identity of Declarant*

■ Jones contends, correctly, that the party offering the statement must show that the declarant spoke from personal knowledge. He also contends, incorrectly, that in every

---

5. Compare *United States v. Cain,* 587 F.2d 678 (5th Cir.), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979) where extrinsic evidence demonstrated the CB radio statements could not have been contemporaneous with the event described.

instance the identity of the declarant must be established. The contents of the two statements at issue in this case are sufficient to support the conclusion of the trial judge that the declarants spoke from first-hand knowledge. Additionally, we held in *Booth* that identification of the declarant is not an absolute prerequisite to introduction of the statement. What we said in *Booth* is dispositive of these issues:

> Although the declarant need not have been a participant in the perceived event, it is clear that the declarant must speak from personal knowledge, *i.e.*, the declarant's own sensory perceptions. The more difficult question involves the quantity and quality of evidence required to demonstrate the existence of the requisite personal knowledge. We conclude that in some instances the content of the statement may itself be sufficient to demonstrate that it is more likely than not the product of personal perception, and in other instances extrinsic evidence may be required to satisfy this threshold requirement of admissibility. Identification of the declarant, while often helpful in establishing that he or she was a percipient witness, is not a condition of admissibility. When the statement itself, or other circumstantial evidence demonstrates the percipiency of a declarant, whether identified or unidentified, this condition of competency is met. 306 Md. at 324–25, 508 A.2d 976 (footnote omitted).

### *Corroboration*

■ The question of corroboration, considered in the context of the present sense impression exception, ordinarily relates to proof of first-hand knowledge or spontaneity. We have rejected the contention that corroboration by an equally percipient witness is invariably required as a condition to the admissibility of such a statement, while at the same time noting that in some instances extrinsic evidence in the nature of corroboration may be required. *Booth, supra,* 306 Md. at 327–30, 508 A.2d 976. Respondent puts a different spin on the argument in this case, contending that corroboration should be required to show that the *witness* is

**32**

being truthful in recounting what he says he heard. In support of his contention, Respondent cites the following language of the Court of Special Appeals in this case:

> To permit evidence such as that of Byrd would throw open the door to imaginative, if not fabricated, present sense declarations between unknowns. Cross-examination of those witnesses is almost guaranteed to test absolutely nothing.
>
> *Jones v. State, supra,* 65 Md.App. at 126–27, 499 A.2d 511.

We cannot be certain whether the concern of the intermediate appellate court was directed to the possibility of fabrication by unknown declarants, or the danger that the witness on the stand could falsely testify that such a statement was made without serious fear of detection of his perjury. If it was the former, we are satisfied that the inherent trustworthiness of a statement of perception given contemporaneously with the event being described is sufficient to outweigh that concern. If it is the latter, we are willing to place our trust in the efficacy of the oath and of cross-examination, as we do in the case of any other witness who is present and testifying. There is no absolute safeguard against lying. An officer who would testify that he heard something when he did not could as well testify that he saw something when he did not. Trooper Byrd was sworn and subject to cross-examination. Respondent was at liberty to develop any bias the witness may have had, and to show whether Trooper Byrd knew the details of the alleged assault before he recounted the statements he allegedly heard. He was at liberty to argue the dangers of fabrication and the absence of corroboration. The jury was at liberty to reject, or accept and give appropriate weight to, the testimony that the statements were made.

### Opinion Within Statement

Jones complains that the statement of the second declarant, to the effect that the little car was "trying to catch up with" the police car was an inadmissible conclusion

or opinion. In *Booth,* we recognized that people speaking without reflection often cast their language in terms of inference or opinion. 306 Md. 326–37, 508 A.2d 976. We quoted with approval the conclusion of Professor Jon Waltz that:

> If the out-of-court declaration is not the sort of conscious deduction which the conditions attaching to the present sense impression exception would themselves prohibit, it should be receivable as a shorthand fact description. *Booth, supra,* 306 Md. at 327, 508 A.2d 976, quoting Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes,* 66 Iowa L.Rev. 869, 881–82 (1981).

Although couched in terms of an opinion, the statement in the context of this case is the quintessence of a shorthand statement of fact, describing in few words a number of facts about the proximity, apposition, and movement of two motor vehicles. The form in which the information was communicated did not render it inadmissible.

### Relevance

■ Jones contends, and the Court of Special Appeals agreed, that there was insufficient evidence to tie the events described in the CB radio transmissions to the incident described by the complainant. As the Court of Special Appeals put it, "[n]o one actually knows that the CB radio conversation was between 'truckers' or that it was on Interstate 95, or that it involved Trooper Jones and the [complainant]." *Jones, supra,* 65 Md.App. at 126, 499 A.2d 511. To be admissible, the statements had to be relevant to the case at hand, but that is not to say that certainty of a nexus was required. The standard of proof for admissibility of evidence is ordinarily one of preponderance, and that is true even though the standard of proof as to the ultimate issue in the case is higher. *Bourjaily v. United States,* —— U.S. ——, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987). Thus, the appropriate question with respect to relevance is whether the evidence was sufficient to persuade the trial

judge that it was more likely so than not so that the statements heard by Trooper Byrd related to the incident in question. We find it helpful to first consider the possibility that the statements and the events were not connected. In order to find that there was no connection, one would have to believe that on the day and at the hour described by the complainant, and in the same general location, there was a small car other than the complainant's chasing a State police car other than Jones's that was operating with its lights off. The possibility of that coincidence occurring is, as a matter of common sense, extremely slight. We have no difficulty in concluding that it was more likely so than not so, indeed quite likely, that the statements heard by Trooper Byrd pertained to the incident involving the complainant and Trooper Jones. The threshold finding of relevance was properly made.[6]

### The Confrontation Clause

We shall assume, without deciding, that Respondent's objections to the admissibility of the hearsay statements were sufficiently broad to encompass a claim that his constitutional right to confrontation was involved. We recently discussed the history and interpretation of the confrontation clauses of the federal and state constitutions in *Wildermuth v. State*, 310 Md. 496, 530 A.2d 275 (1987). As Judge Adkins there pointed out for the Court, the right of confrontation will accommodate hearsay statements upon a sufficient showing of necessity and reliability. *Wildermuth, supra*, 310 Md. at 514–15, 530 A.2d 275. In *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980), the United States Supreme Court said:

> In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even

---

6. The threshold findings of the trial judge on questions of admissibility are not communicated to the jury, and the jury is of course free to make its own determination concerning relevance.

then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Here, the "necessity" prong was satisfied because of the unavailability of the unknown declarants, and Jones's challenge is to the reliability of the evidence. For largely the reasons previously stated, we find that the evidence also satisfies the "reliability" prong of the test. Admission of the hearsay statements did not violate Respondent's constitutional right of confrontation.

We reverse and remand to permit consideration of additional issues raised by Respondent but not reached by the Court of Special Appeals.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS; COSTS TO BE PAID BY RESPONDENT.

ELDRIDGE, Judge.

I concur in the result. I would hold, however, that there was no material variance between the statements related by Trooper Byrd to the court and to the jury. I do not agree with the Court's rationale with respect to this issue.