**STATE of Missouri, Respondent,**

v.

**Ronald Lee DUNN, Appellant.**

**No. WD 44428.**

Missouri Court of Appeals,
Western District.

Dec. 17, 1991.

**513**

Theodore S. Elo, Kranitz & Kranitz, P.C., St. Joseph, for appellant.

William L. Webster, Atty. Gen., Millie Aulbur, Asst. Atty. Gen., Jefferson City, for respondent.

Before BERREY, P.J., and ULRICH and HANNA, JJ.

ULRICH, Judge.

Defendant, Ronald Lee Dunn, appeals his conviction for driving while intoxicated (DWI). § 577.010, RSMo 1986. The jury found Mr. Dunn guilty, and the court sentenced him as a prior and persistent offender to five years imprisonment. On appeal, defendant argues that the court erred in instructing the jury and in admitting hearsay evidence. The judgment is affirmed.

Mr. Roger Cronk, formerly a Holt County Deputy Sheriff, testified that he was on duty the evening of May 25, 1989. At approximately 10:30 p.m., he was south of Mound City, on Route E, driving toward I–29. When he reached the top of the hill near the Squaw Creek Truck Stop (I–29 and the 79 mile marker), he monitored Citizen's Band (CB) radio transmissions reporting "a car traveling southbound in the northbound lane on I–29." Cronk acknowledged the communications, entered onto I–29, and drove south.

Mr. Cronk testified that the people who reported seeing the illegally-driven vehicle seemed "excited." They were seeking any law enforcement officer to "take care of the problem.... [t]his car being in the wrong lane." The reports Mr. Cronk heard described a brown or dark-colored car being driven south in the northbound lane of interstate I–29. The reports heard by Mr. Cronk reported the vehicle between the 79 and 70 mile markers, and as he approached the area, CB reports located the vehicle "bouncing from 77 to 75 to 73." At some point, Mr. Cronk asked the Holt County Sheriff's dispatcher by radio transmission to inquire if an Andrew County deputy sheriff was nearby to assist because the car he was seeking was approaching the Holt County and Andrew County line.

At 10:30, Deputy Mike McNeely of the Andrew County Sheriff's office was advised by the Andrew County dispatcher of a vehicle traveling southbound in the northbound lane of I–29. Deputy Sheriff McNeely, who was at about the 58 mile marker, drove north on I–29, although he wasn't sure of the reported vehicle's location. Deputy Sheriff McNeely testified that as he approached the Holt County line, Mr. Cronk radioed that he had heard a CB transmission reporting the car at the 70 mile marker, parked on the right hand shoulder facing south in the northbound lane. Between the 58 and 70 mile markers, Deputy McNeely did not see any other traffic southbound in the northbound lane as he approached the 70 mile marker.

When Deputy Sheriff McNeely arrived underneath the overpass near the 70 mile marker, he parked his vehicle in front of a vehicle facing south, located on the shoulder of the northbound lane. When he looked in the car, he saw Mr. Dunn, alone, "passed out at the wheel." The defendant's head was resting on the steering wheel, and the engine of the car he was in was "shut off." Deputy Sheriff McNeely never saw Mr. Dunn drive the vehicle. Deputy Sheriff McNeely woke Mr. Dunn. Mr. Dunn was very confused about where he was and what position Deputy Sheriff McNeely held. A short time later Mr.

Cronk arrived. The Deputy Sheriffs asked Mr. Dunn to exit the car.

The Deputy Sheriffs observed that Mr. Dunn was unsteady on his feet, appeared disheveled, and smelled of alcohol. Deputy Sheriff McNeely opined that the defendant was intoxicated. The officers helped him walk because they were afraid that he would fall into traffic on the highway. Mr. Cronk arrested Mr. Dunn for DWI and read him his fifth and sixth amendment rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Mr. Cronk then asked Mr. Dunn how he arrived on the interstate and Mr. Dunn responded that he thought that he probably entered onto the interstate highway "at the top of the hill." The record indicates that the nearest exit to the north was approximately six miles away. Mr. Dunn told Mr. Cronk that he had been at a bachelor party earlier. Mr. Cronk did not see any alcoholic beverage containers in Mr. Dunn's car. However, Mr. Dunn's car smelled of alcoholic beverages. When Mr. Dunn was tested for blood alcohol content, he "blew" .19 percent in the breathalyzer.

Mr. Dunn testified in his own defense. At the time of the offense, he was living in Craig, Missouri. At about 8:00 p.m., he had gone to a bachelor party in Agency, Missouri (just south and east of St. Joseph), and acknowledged drinking three beers. He left the party at about 9:00 p.m., and drove on a county road to 169 highway and on to Weidemeiers' Truck Stop, near St. Joseph, where he drove onto I-29. He did not stop anywhere between Agency and the 70 mile marker.

Mr. Dunn testified that he had driven north from St. Joseph in his 1979 Oldsmobile Cutlass Supreme. About a quarter mile south of where Deputy Sheriffs McNeely and Mr. Cronk observed Mr. Dunn's car parked and him in it, the vehicle's transmission malfunctioned. He had just crested a hill when the forward gears would not respond properly. He made a U-turn in the middle of I-29, and drove the car onto the shoulder of the road. He heard a radio weather forecast predict-

ing rain, so he backed the car under an overpass. Mr. Dunn later testified that the only time he drove south in the northbound lane of I-29 was about a quarter mile to park the car underneath the overpass.

Mr. Dunn testified that he exited his car and unsuccessfully tried to hitchhike for about fifteen minutes. He reentered his car, "removed the keys and proceeded to lay down and go to sleep." He claimed to have been sleeping fifteen to twenty minutes when Deputy McNeely arrived. Mr. Dunn did not say anything to either of the Deputy Sheriffs about how he arrived at the location or that his transmission was defective.

Mr. Dunn then testified that the car smelled of beer because he had bought a six pack of beer in St. Joseph, and when he couldn't get a ride hitchhiking, he drank all six beers. He claims that he threw the empty cans into a ditch.

In his first point, defendant argues that the trial court erred in failing to sua sponte submit jury instruction MAI–Cr 3d 310.02 regarding circumstantial evidence.[1] Trial courts are compelled to submit the circumstantial evidence instruction where the evidence is wholly circumstantial. However, the instruction need not be given in cases where the evidence is partially direct and partially circumstantial. *State v. Mallett,* 732 S.W.2d 527, 536 (Mo. banc), *cert. den.* 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987); *State v. Bannister,* 680 S.W.2d 141, 148 (Mo. banc 1984), *cert. den.* 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985). Mr. Dunn testified that he drove his vehicle to the location where he was found inebriated. He admitted drinking three beers shortly before he drove his vehicle. Mr. Cronk testified that he heard CB transmissions that a vehicle was traveling southbound in the northbound lanes of I-29 less than fifteen minutes before he and Deputy Sheriff McNeely found Mr. Dunn's parked vehicle facing south on the shoulder of the northbound lane of I-29. Mr. Dunn was in the vehicle. Direct evidence supports convic-

---

1. The appellant's brief fails to set forth the text of the instruction, in violation of Rule 30.06(e).

tion of the crime charged. Therefore, the trial court did not abuse its discretion in failing to give the circumstantial evidence instruction.[2]

■ For his second point on appeal, Mr. Dunn claims that the trial court erred in admitting Mr. Cronk's testimony regarding the CB transmissions that he heard.[3] The argument relies on three bases: 1) the transmissions were hearsay and no exception to the hearsay exclusion rule applies; 2) the declarants' identities are unknown; and 3) the declarants were not specific as to where the car was, or even that it was in motion.

Mr. Cronk's testimony relating the unknown and unsworn declarants' statements via the CB radio is hearsay. The statements were admitted for the truth of the matter asserted: that defendant was driving his automobile only moments before the officers arrived. The prosecutor at trial and the state on appeal contend that the statements were properly admitted under the excited utterance exception to the hearsay rule.

The essential test for admissibility of a spontaneous statement or excited utterance is neither the time nor place of its utterance but whether it was made under such circumstances as to indicate it is trustworthy. The rationale of this exception to the hearsay rule is that where the statement is made under the immediate and uncontrolled domination of the senses as a result of the shock produced by the event, the utterance may be taken as expressing the true belief of the declarant.

*State v. Van Orman,* 642 S.W.2d 636, 639 (Mo.1982) (citations omitted). The state argues that the circumstances surrounding the reports, as well as Mr. Cronk's testimony that the declarants were excited, supports the admission of this testimony under the excited utterances exception.

Mr. Dunn counters that the case of *State v. Chapman,* 724 S.W.2d 713 (Mo.App. 1987), is directly on point. In that case, an officer arrived at the scene of an accident and was met by three individuals sitting on the railing of a bridge overlooking the accident. *Id.* at 714. One of the persons, Mr. Best, told the officer that the defendant in the case had been driving the truck involved in the accident, which was sitting in the ravine. *Id.* The defendant's own statements were excluded under the *Miranda* rule, and there was no other evidence showing who had been driving the truck when the accident occurred. *Id.* at 715. In *Chapman,* there was no contention that Mr. Best was still excited when his statement was made after time elapsed since the accident, or that his statement was made under continuing conditions of stress. *Id.* Mr. Best's statement was not shown to be contemporaneous with the event.[4] *Chapman,* while instructive, is not dispositive.

In this case, Mr. Cronk specifically testified that the several declarants were excited when they spoke. Mr. Cronk heard the transmissions clearly when he arrived at mile marker 79 on I–29 and entered onto the interstate highway. Drivers travelling in appropriate lanes of a divided interstate highway were excited when they saw a vehicle approaching them in the lane in

2. The defendant failed to request the circumstantial evidence instruction. However, the Instructions for Use of MAI–CR 3d state that the instruction "may be given on the Court's own motion."

3. The defendant failed to preserve this issue for appeal. The objection was raised only once at trial and was not made continuing despite numerous questions propounded to Mr. Cronk about the CB transmission that he heard describing a vehicle southbound in the northbound lane of traffic on I–29. Defense counsel cross-examined Mr. Cronk about the CB transmissions that he heard after failing to object to such questions on direct. However, the issue was raised in the Motion for New Trial. The issue is reviewed for plain error because the CB transmissions provide timely evidence of Mr. Dunn's operation of his vehicle.

4. *See United States v. Cain,* 587 F.2d 678 (5th Cir.), *cert. denied,* 440 U.S. 975, 99 S.Ct. 1543, 59 L.Ed.2d 793 (1979). In a case involving Rule 803(1), Fed.R.Evid., the present sense impression exception, a statement made by an unknown "C.B.er" was excluded because it was not sufficiently contemporaneous with the event, being made fifteen to forty-five minutes after the event.

which they were driving. The CB transmissions described the southbound vehicle close to the mile marker where the defendant was found. The evidence supports the conclusion that the CB transmissions heard by Mr. Cronk were made shortly after the people who transmitted the messages encountered the moving vehicle. Several people described the errant southbound vehicle in a relatively small section of highway as Deputy Sheriff Cronk pursued it. The number of similar consistent reports from different declarants tend to corroborate as fact that the declarants had firsthand knowledge that Mr. Dunn's vehicle was driving southbound in the northbound lane shortly before Mr. Dunn was observed in his vehicle.[5] The surrounding facts promote the trustworthiness of the evidence. The CB statements heard by Mr. Cronk qualify within the excited utterance exception to the hearsay rule.

Mr. Dunn argues that the declarants were not specific as to where the car was, or even that it was in motion. The CB transmissions Mr. Cronk heard reported Mr. Dunn's vehicle between the 79 and 70 mile markers, and they were "bouncing from 77 to 75 to 73." The locations of the vehicle observed by declarants were not inconsistent with the location of Mr. Dunn's vehicle when it was first observed by Mr. Cronk and Deputy Sheriff McNeely.

The CB transmissions also reported Mr. Dunn's vehicle to be moving. Mr. Cronk testified specifically on redirect examination that the vehicle observed was moving:

Q. (By [prosecution]) In the first reports you heard on the C.B. could you state whether or not the vehicle was moving according to the traffic?

A. Yes, according to the reports I had he was southbound in the northbound lane.

On recross-examination, Mr. Cronk was more definite, "All of them that I heard indicated he was moving." The obvious inference is that while the defendant was driving further south, the northbound traf-

fic reported observing the vehicle at different mile markers.

The declarants' anonymity is not fatal to the admissibility of the statements once the statements qualify within the exception. *State v. Moss*, 627 S.W.2d 667, 668–69 (Mo. App.1982). The defendant's right to confront the declarants is not violated by operation of this well-recognized exception to the hearsay rule. *Id.* The statements were properly admitted as excited utterances and within the exception to the hearsay rule. Mr. Dunn's second point is denied.

The judgment of conviction is affirmed.

All concur.

---

**5.** *Compare State v. Jones*, 311 Md. 23, 532 A.2d 169, 172–73 (Md.1987), where corroboration is only required to the extent that it shows firsthand knowledge and spontaneity.