STATE of Missouri, Respondent,

v.

Edward RAMSEY, Appellant.

No. WD 45573.

Missouri Court of Appeals,
Western District.

Feb. 15, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 29, 1994.

Application to Transfer Denied
May 26, 1994.

J. Bryan Allee, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and SPINDEN, JJ.

SPINDEN, Judge.

Edward Ramsey appeals his conviction, following a jury trial, of two counts of first degree murder. The trial court sentenced him to two life sentences without possibility of parole. He contends that the state did not meet its burden of proof at trial, that he should have received a new trial because of "newly discovered evidence," that the trial court's instruction on circumstantial evidence was erroneous, and that the instruction defining reasonable doubt was unconstitutional. Ramsey also appeals the denial of his Rule 29.15 motion for post-conviction relief. We affirm the trial court's judgment and the denial of his Rule 29.15 motion.

The jury convicted Ramsey of murdering James Gaither and Mark Weibel, two workers at a Kansas City automobile upholstery shop, on February 23, 1989. Ramsey had left his Cadillac convertible at the shop to have a new top put on it. Ramsey had given the shop owner a $100 deposit for the work. During the afternoon of February 23, he went to the shop to pick up his car with his uncle, Ricky Ramsey, and Ed Fisher. The Ramseys went into the shop office; both carried concealed handguns. At some point the Ramseys pulled out their guns. Gaither

and Weibel were ordered to lie down on the garage floor where they were each shot in the head. The Ramseys left with Weibel's and Gaither's money and personal belongings, the shop's copy of the receipt Eddie Ramsey had received for the $100 deposit, and the Cadillac.

## I.

■ Ramsey's primary contention on appeal is that the trial court erred in denying his motion for a judgment of acquittal at the close of the evidence. He asserts that the state's evidence was insufficient to establish, beyond a reasonable doubt, that he was guilty of first degree murder. He argues that the state did not establish that he "deliberated coolly and deliberately on the matters for any length of time prior to the offense." We disagree.

When we test the sufficiency of evidence, we determine whether the evidence is sufficient to persuade any reasonable juror beyond a reasonable doubt as to each of the elements of the crime. *State v. O'Brien,* 857 S.W.2d 212, 215 (Mo. banc 1993). We defer to the jury's determination of witness credibility and the proper weight to be given the evidence. To ensure that we do that, we review the evidence "in the light most favorable to the prosecution." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *O'Brien,* 857 S.W.2d at 215–16. We ignore all contrary evidence and inferences. *O'Brien,* 857 S.W.2d at 216.

The state made a submissible case. Although the state did not present any direct evidence that Eddie Ramsey shot Gaither and Weibel, the jury heard sufficient evidence to convict him of first degree murder. The state established that he walked into the office armed with a .22 caliber Luger pistol. He walked in with his uncle, Ricky Ramsey, who also was armed. He knew that he needed to pay $639 for his car's repair, but he

walked in with only $250 cash and no check. He and Ricky Ramsey pulled out guns, and both guns fired.[1] Although ballistics experts did not trace any of the spent bullets found in the shop to Eddie Ramsey's gun, several of the bullets found were not traceable to either gun because of their condition. After the shooting, Eddie Ramsey took from the office the shop's copy of a receipt showing his $100 deposit for his car's repair. He drove away in his car.

Even if the jury believed that Eddie Ramsey was only an accomplice and that Ricky Ramsey shot both men while Eddie Ramsey stood by, the jury was justified in finding Eddie Ramsey guilty of first degree murder. The jury had sufficient evidence from which to conclude that Eddie Ramsey, even as an accomplice, knowingly caused Weibel's and Gaither's deaths after deliberating upon the matter. Section 565.020, RSMo 1986.

We recognize the Supreme Court's instruction that "where the State's theory is accomplice/accessory liability, the jury must also find that the defendant had a purpose to aid another in the commission of the crime." *State v. Ervin,* 835 S.W.2d 905, 923 (Mo. banc 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993). The court has further instructed that "[p]roof that the defendant merely aided another [who had] the purpose of facilitating an intentional killing cannot be sufficient to prove first degree murder[.]" *O'Brien,* 857 S.W.2d at 218.

The jury could reasonably find intent to kill and cool deliberation even if it believed Eddie Ramsey's testimony that he stood by while Ricky Ramsey ordered the victims to the floor and shot them in the head. Eddie Ramsey walked in with a gun which was fired. He made no effort to stop Ricky Ramsey—not even to protest his acts. He did not leave until he could get the keys to his Cadillac and after he made an effort to hide his presence by taking the shop's copy

---

1. Although Eddie Ramsey said at trial that he was unarmed, he gave three conflicting statements to police. The police videotaped the statements, and the state showed all three to the jury. In the first statement, Eddie Ramsey denied knowing anything about the murders and said he paid the full $739 to have his car repaired. In the second statement, he admitted being in the shop during the shootings but said he was un-armed. He said that he did not know that Ricky Ramsey was going to rob and kill the shop employees. He admitted that he did not pay for his car repair. In the third statement, he admitted that he was armed with a Luger. He admitted that his gun discharged but only because Ricky Ramsey pushed him, and that the bullet struck the floor.

of a receipt for his earlier deposit. He made no apparent effort to inform authorities of the shooting when he was away from Ricky Ramsey.

A defendant's presence, opportunity, companionship, conduct, and flight are circumstances from which his purpose or intent may be inferred. ... [D]efendant's original denial of any involvement in the incident followed by exculpatory admissions of his cooperation ... gives rise to an inference of consciousness of guilt.

*State v. Simpson*, 778 S.W.2d 705, 707 (Mo. App.1989).

Moreover, the jury was free to disbelieve his contention that he did not participate in the shooting in any way and that Ricky Ramsey killed the men. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

## II.

Ramsey contends in his second point that the trial court erred by overruling his motion for a new trial based on "newly discovered evidence." His newly-found evidence was the testimony of Ed Fisher and Steve Ramsey, Eddie Ramsey's cousin. He says he could not find them before trial. Eddie Ramsey agreed at trial to stipulations setting forth what Fisher and Steve Ramsey would testify to if called as witnesses, but he contends that the stipulations were based on their statements to police and that their "live" testimony would have confirmed his version of the incident.

Ramsey acknowledges that he filed his motion for a new trial outside the 15–day limit set by Rule 29.11(b).[2] He filed a motion for a new trial on February 1, 1990. The trial court denied it. He filed this second motion for a new trial on November 5, 1991. At best, the second motion was an attempt to amend his motion for new trial, but, even as an amendment, it was well beyond the limits of Rule 29.11 and should have been denied.

As this court's Eastern District said:

Rule 29.11(b) grants a defendant in a criminal case the right to file a motion for a new trial "within fifteen days after the return of the verdict". The trial court may

extend this time[.] ... [T]he request for a new trial based upon newly discovered evidence cannot avoid the strictures of Rule 29.11(b) *See, e.g. State v. Mucie*, 448 S.W.2d 879, 890 (Mo.1970); *see also, State v. Davis*, 698 S.W.2d 600, 603 (Mo.App. 1985). Not being timely, the amendment [to a motion for a new trial] preserves nothing for review, and, procedurally, it is "a nullity". *Mucie*, supra at 890.

*State v. Hamilton*, 732 S.W.2d 553, 555 (Mo. App.1987). Missouri procedures do not expressly provide a means for a criminal defendant to present claims of newly-discovered evidence to the judiciary after the time to file a Rule 29.11 motion has expired. *Id.; State v. Mooney*, 670 S.W.2d 510, 513–15 (Mo.App. 1984). The only means by which a criminal defendant with a late motion can seek relief based on newly-discovered evidence is by application to the governor for executive clemency or pardon pursuant to Mo. CONST. art. IV § 7 (1945).[3] *Hamilton*, 732 S.W.2d at 555 n. 2; *Whitaker v. State*, 451 S.W.2d 11, 15 (Mo.1970); *State v. Johnson*, 286 S.W.2d 787, 796 (Mo.1956).

When a criminal defendant's conviction is on direct appeal and he has discovered new evidence after the time to file a Rule 29.11 motion has expired, this court may, in extraordinary cases, remand the case as plain error pursuant to Rule 29.12(b) or pursuant to this court's inherent power so the defendant can present his new evidence. *Hamilton*, 732 S.W.2d at 555; *Mooney*, 670 S.W.2d at 515–16; *State v. Davis*, 698 S.W.2d 600, 603 (Mo.App.1985); *State v. Williams*, 673 S.W.2d 847 (Mo.App.1984).

We do not discern that this is an appropriate case for remand. The trial court, notwithstanding its lack of jurisdiction to do so, gratuitously reviewed Ramsey's second motion for a new trial and determined that it lacked merit. We concur. Although neither of the witnesses testified at trial,

**2.** The rule provides for extensions of up to 10 days "for good cause shown."

**3.** That provision says, "The governor shall have power to grant reprieves, commutations and pardons, after conviction, for all offenses except treason and cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to provisions of law as to the manner of applying for pardons. The power to pardon shall not include the power to parole."

Ramsey was able to establish the same information to which they would have testified through the stipulations of facts.

### III.

Ramsey complains in his third point that the trial court refused his instruction on circumstantial evidence modeled after MAI–CR 3d 310.02. Under the facts presented, he argues, the state's case consisted entirely of circumstantial evidence, and the trial court was required to submit the instruction.

He is wrong. The Supreme Court has ruled that the circumstantial evidence rule stated in MAI–CR 3d 310.02 is an incorrect statement of the law. *State v. Grim*, 854 S.W.2d 403 (Mo. banc 1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). Moreover, even before *Grim*, MAI–CR 3d 310.02 "need not be given in cases where the evidence is partially direct and partially circumstantial." *State v. Dunn*, 821 S.W.2d 512, 514 (Mo.App.1991). *See also State v. Mallett*, 732 S.W.2d 527, 536 (Mo. banc 1987), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987), and *State v. Bannister*, 680 S.W.2d 141, 148 (Mo. banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985).

### IV.

In point four, Ramsey complains of the definition of reasonable doubt set out in MAI–CR 3d 302.04. His point lacks any merit. Missouri courts have repeatedly rejected the argument. See *State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993); *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Perkins*, 831 S.W.2d 637, 640 (Mo.App.1992); *State v. Waller*, 816 S.W.2d 212, 218 (Mo. banc 1991); *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991).

### V.

In point five Ramsey argues that his Rule 29.15 motion was erroneously denied because the trial court denied him his due process rights in the manner it handled his offer to plead guilty to reduced charges. Ramsey made the offer simultaneously with his motion for new trial based on newly-discovered evidence. Ramsey offered to plead guilty to second degree murder, armed criminal action, and first degree robbery if the trial court would grant his motion. The trial court agreed to accept his plea but then refused it after Ramsey balked at admitting to any wrongdoing.

Ramsey asked the court, "So if I don't take a plea bargain then that means that when you just said you overturned it, that still means I could have a new trial then, right?" The court responded, "Well, yes." Later, the court asked Ramsey why he was pleading guilty. Ramsey said, "Because they're making it sound like that's the only alternative I've got." The court replied, "Well, no. You have a right to a trial."

Ramsey argues in this appeal "that the motion court was clearly erroneous in denying postconviction relief based on the trial court's failure to inform Eddie Ramsey, prior to the entry of his plea, that he would set aside the order granting a new trial if he did not enter a plea to second-degree murder."

We disagree. The trial court did not have jurisdiction to rule on Ramsey's motion in the first place. Because the motion was beyond the limit of Rule 29.11(b), it was a nullity. See II, page 417.

### VI.

In point six, Ramsey contends that the motion court erred in refusing to grant his request for a change of judge for good cause shown. He asserts that he intended to call the motion court judge, the Honorable David W. Shinn, as a material witness in his Rule 29.15 hearing to explain the circumstances surrounding his fifth point. His point is without merit for the same reason outlined in V, *supra:* his motion was a nullity.

### VII.

In point seven, Ramsey argues that the motion court denied him due process of law by refusing his request for a writ of *habeas corpus ad testificandum* so he could attend the motion hearing. The point is without merit.

The motion court considered Ramsey's testimony by deposition. Rule 29.15(h) provides, "The court [considering a Rule 29.15 motion for post-conviction relief] may order that testimony of the movant shall be received by deposition." Given the nature of a

Rule 29.15 hearing, the motion court's reliance on Rule 29.15(h) to hear Ramsey by means of his deposition was not a denial of due process of law. The Supreme Court of Missouri has instructed, "A post-conviction relief proceeding is a civil, not criminal, proceeding. ... The confrontation clause does not apply to a post-conviction relief hearing." *Leisure v. State*, 828 S.W.2d 872, 878 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

## VIII.

In his final point, Ramsey complains that the motion court wrongly denied his Rule 29.15 motion because he established that his trial counsel had been ineffective. He asserts that his trial attorney: (1) did not object to the prosecutor's referring during closing argument to other murders committed in Kansas City; (2) failed to call Mary Rollins as a witness to help establish that Ricky Ramsey was the only one who fired shots at the victims; and (3) stipulated to evidence that two witnesses, if called, would testify that they were not present at the murder scene. We find no error.

### A.

■ Ramsey complains that his attorney did not object during closing argument to the prosecutor's argument:

You know, we set a record last year, a hundred forty homicides in Kansas City. And we had quite a few murder first degrees, because all that's required for murder first degree is that they deliberate, that they think about it for no matter what length of time, no matter how brief. So if you walk up and you take out a gun and you aren't in any particular rush and you think about it before you kill somebody, that's murder first degree. Lots of murder first degrees.

Lots of people know about this case. Why is that? When you hear about this case it's different than the hundred forty other murders. This is one of only a handful of homicides that is what? An execution. This is the first execution of 1989. And you know the other ones. An attorney. It comes to mind because the attorney was executed. And the final execution

of 1989 is Ann Harrison, the girl taken out, raped and executed.

And the reason we remember these types of crimes out of a hundred forty is because without saying anything it hits us in our gut, in our soul, that they take two men out and execute them. So as you consider the evidence in a cold, analytical sense, keep in the back of your mind the reason we're here, because the reason we're here is that this man decided on an execution.

Ramsey argues that the references to other murders were outside the record and not substantiated by any evidence and that it "was prejudicial because the State used these references to single out the charges against Eddie Ramsey with the other crimes, which the State labeled 'executions.'"

This issue was not a sound basis for granting his Rule 29.15 motion. Ramsey's attorney testified that he did not object to the argument for three reasons:

One, I didn't think it was that prejudicial. Two, I think the judge would overrule me *if I would have objected, and make me look bad*, because the judge usually says sustained or overruled or the jury will remember the evidence, and ... [t]hree, I thought it was part of fair comment. You have great leeway, as you know, in closing argument.... [A]t the time you have a split second to make a decision. I obviously decided not to make the decision. Even if I had of, was it prejudicial to the point— that's what flashes through my mind when they say something. Is it prejudicial to the point that I'm entitled to a new trial or he can't get a fair trial? I didn't think it was. You may disagree. That's trial tactics or strategy.

Trial counsel has much latitude in matters of trial strategy. Counsel should not be convicted of being constitutionally ineffective only if it appears, upon reflection after trial, that he or she may have erred in judgment. *State v. Davis*, 814 S.W.2d 593, 603 (Mo. banc 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 911, 116 L.Ed.2d 812 (1992). We do not discern that Ramsey suffered substantial deprivation of his right to a fair trial because of the prosecutor's argument. *See Schlup v. State*, 771 S.W.2d 895, 900 (Mo.App.1989).

### B.

■ Ramsey complains that his trial attorney was ineffective for not calling Mary Rol-

lins as a witness. Rollins says she could have testified that Ricky Ramsey admitted to her that he alone had shot Gaither and Weibel and that Eddie Ramsey was not involved.

Ramsey's attorney talked to Rollins before trial. He said:

It was my understanding at that time that she had given a statement that she didn't know anything about [the murders], and I believe she told me that at one time. Then I think later on she changed her mind and said she did know something about it, and I felt to use her—and I believe she even came to the trial part of the time.... I believed that she would not make a good witness, and I discussed it with [Eddie Ramsey], and we decided not to use her.

. . . .

I didn't call her as a witness because I'd talked with [Eddie Ramsey], and I felt she wouldn't make a good witness, and the information that I recall at the time she had I didn't think would be beneficial, and I felt she could be impeached or broken down on cross-examination.

The motion court did not err in concluding that Ramsey's attorney was not ineffective in deciding not to use Rollins' testimony. She was a convicted felon. Her testimony did not exonerate Ramsey, and Ramsey agreed with his attorney's tactical decision not to use her.

## C.

Ramsey complains that his trial attorney's assistance was ineffective because the attorney agreed to stipulate to Tim Wiley's and Willie Jefferson's whereabouts. Their whereabouts during the murder were significant because Ramsey told officers in one statement that Wiley and Jefferson were at the upholstery shop. Ramsey's attorney agreed to stipulate that, at the time of the shootings, Wiley and Jefferson were picking up Jefferson's girlfriend after work and her child from the day care center.

Ramsey's attorney explained that his reason for entering into the stipulation was to avoid Wiley's and Jefferson's giving "live" testimony:

It depends on your tactical decision at the time, whether or not you think the witness—from reading any reports you've seen on him or talking with your client and other people, as to whether you think he would make a good witness and whether or not you felt he could be broken down, whether these witnesses could be broken down on cross-examination. I made the tactical decision to put in the stipulation because I thought it was more beneficial to me and my client rather than taking advantage of putting a witness on, and God knows what he is going to say when he gets on.

The trial court did not clearly err in concluding that this was a matter of trial strategy which was not inappropriate.

For these reasons, we affirm the judgment of the trial court convicting Ramsey of two counts of murder in the first degree and sentencing him to two terms of life imprisonment without the possibility of parole. We also affirm the judgment of the motion court to deny Ramsey's Rule 29.15 motion for post-conviction relief.

All concur.