**STATE of Missouri, Respondent,**

v.

**Donell SIMPSON, Appellant.**

**No. 54587.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Aug. 15, 1989.

Motion For Rehearing and/or Transfer to Supreme Court Denied Sept. 13, 1989.

Application to Transfer Denied
Nov. 14, 1989.

William J. Shaw, Public Defender, Stormy B. White, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty Gen., Daryl R. Hylton, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant was convicted by a jury of second degree murder and armed criminal action and sentenced as a prior offender to twenty years for the murder conviction and twenty years concurrent for the armed criminal action conviction. We affirm.

Because defendant challenges the sufficiency of the evidence to support his convic-

tions, we accept as true all evidence, direct or circumstantial, and all reasonable inferences supportive of the verdict and disregard those portions of the record contrary to a finding of guilt. *State v. Turner*, 623 S.W.2d 4, 6 (Mo.banc 1981). Viewed in this light the evidence supports the following account of events. On May 17, 1986, at approximately 4 a.m., defendant and Milton Buckner went to Terry Elliott's house in St. Louis to buy some cocaine. Buckner gave Elliott a $100 bill and said he wanted a "30 cent piece of rock" ($30 worth of cocaine). Frank Vinson drove Elliott to a dealer's house where Elliott used the $100 to purchase a 30 cent piece plus additional cocaine which he used himself. When they returned Buckner became very angry over being short-changed. After arguing over the matter, Elliott finally told Buckner that he would have the rest of Buckner's money at 9 a.m.

Buckner and defendant went to Buckner's residence where Buckner picked up his .44 Magnum. The two switched from Buckner's car to defendant's copper 1978 Trans Am and went back toward Elliott's house. There was conflicting testimony as to who was driving and who was holding the gun. Approximately one-half block from Elliott's residence the two spotted him loading some things into his car. Elliott drove off and Buckner and defendant followed him. Elliott eventually pulled over to the curb in front of Christian Brothers College High School (CBC) on Clayton Road and defendant and Buckner parked in front of him. Elliott got out of his car and approached defendant's car. Elliott was shot in the neck at close range and died.

Ernest Coleman testified that he was travelling east on Clayton Road at approximately 6:15 a.m. on May 17. He noticed two cars turning slowly onto Clayton Road, one was a brown Trans Am and the other a white Buick. Coleman took notice of the situation because he suspected a drug deal was taking place. The driver of the Buick, a black male wearing black clothing, got out and walked to the passenger's side of the Trans Am which was parked in front of him. Coleman observed this while at a stop light. The light turned green, he pro-

ceeded and heard a loud pop. He looked behind him and saw only the white Buick still there. Coleman's description of the driver of the Trans Am matched the appearance of Buckner. Coleman also had identified Buckner as the driver from a line-up photograph.

Officer Michael Capelli testified that he participated in the investigation and arrest of Donell Simpson on May 29, 1986. Capelli read defendant his *Miranda* rights. Defendant waived these rights and initialed and signed a *Miranda* waiver form, and Capelli and Detective Eric Adams began questioning him. During the first hour defendant denied any involvement, but he then made an oral statement.

Capelli said that defendant stated that Buckner told defendant that "they" were going to use the gun to "scare Terry into giving the money back". Defendant claimed that he, not Buckner, was driving and that Buckner was holding the gun in the passenger's seat. Elliott got out of his car and walked up to Buckner's side. Buckner opened the door and put one foot onto the street. Elliott said, "I told you I'll get you the money by 9:00 today." Buckner replied, "I want something now." Defendant looked in his rear view mirror and heard Elliott say, "Don't pop me." He heard a gunshot but did not see the shooting because he was still looking in the mirror. The two then drove off. Defendant made a separate videotaped statement which was played for the jury, but it is not part of the record before us.

Officer Kevin Murphy testified that he was present at the Clayton Municipal Jail on May 29, 1986 when Simpson and Buckner were brought in. Buckner requested that he be taken to the holding facility so he could speak to defendant. Buckner was overheard saying to defendant, "There's no sense in both of us going down on this one. Somebody's going to have to swallow this." Defendant responded, "They got us, man, they got us."

The jury found defendant guilty of murder in the second degree under an instruction patterned after MAI 3rd 313.04, modified by 304.04, which required the jury to find either that defendant shot and killed

Elliott or that defendant acted together with or aided Milton Buckner in doing so. We find the evidence sufficient to support either alternative.

■ The evidence shows that Elliott was shot at close range, three or four feet, while on the passenger side of the automobile occupied by Buckner and the defendant. Witness Campbell identified Buckner as the driver of that automobile. Therefore, despite defendant's statement to the police that he was the driver while Buckner occupied the passenger side of the car armed with the weapon, there was sufficient evidence from which the jury could have found that defendant fired the fatal shot.

■ Ignoring this possibility, defendant argues that his murder conviction must be reversed because "the State presented not one shred of evidence to support appellant's knowledge of Buckner's intent to harm the victim." We disagree. The jury was free to reject defendant's statement to the police that Buckner obtained his weapon only to scare Elliott and to infer from all of the circumstances that defendant knowingly aided Buckner in the shooting of Elliott with the purpose of promoting the commission of the offense. After witnessing the heated argument following the drug purchase, defendant accompanied Buckner who obtained a weapon and returned with him to the victim's residence. The two men followed Elliott a considerable distance through north St. Louis and into Forest Park where their efforts to stop him were frustrated by traffic conditions. They caught up with Elliott and cornered him in front of CBC where he was shot. They fled from the scene so rapidly the car was gone when Coleman turned around after hearing the shot.

A defendant's presence, opportunity, companionship, conduct, and flight are circumstances from which his purpose or intent may be inferred. *State v. Rousan,* 752 S.W.2d 388, 390 (Mo.App.1988). Indicia of aiding and abetting are presence at the scene of the crime, flight therefrom and association with others involved before, during, and after the commission of the crime. *State v. Gannaway,* 649 S.W.2d 235, 239 (Mo.App.1983). Proof of any form of participation by defendant in the crime,

such as driving the vehicle in which the perpetrator escaped, is enough to support a conviction. *State v. Blount,* 734 S.W.2d 309, 310 (Mo.App.1987). Moreover, defendant's original denial of any involvement in the incident followed by exculpatory admissions of his cooperation with Buckner's efforts to "scare" Elliott gives rise to an inference of consciousness of guilt. *State v. Ross,* 606 S.W.2d 416, 425 (Mo.App.1980). Defendant's lament "they got *us,* man, they got *us*", in response to Buckner's implied suggestion of singular accountability, points directly to defendant's accessorial culpability. The evidence amply supports defendant's conviction of second degree murder.

Defendant's second point asserts his conviction of armed criminal action must be reversed because of the State's failure to prove the underlying second degree murder charge. As set forth above, the underlying premise of this argument is without merit.

Judgment affirmed.

PUDLOWSKI, C.J., and SIMEONE, J., concur.