STATE of Missouri, Respondent,

v.

Wayne O'BRIEN, Appellant.

No. 75561.

Supreme Court of Missouri,
En Banc.

June 29, 1993.

Rehearing Denied Aug. 17, 1993.

John A. Klosterman, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Aundreia R. Alexander, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Chief Justice.

Appellant appeals his convictions for first degree murder, Section 565.020, RSMo 1986, and first degree burglary, Section 569.020, RSMo 1986. The trial court sentenced Wayne O'Brien (O'Brien) to life imprisonment without the possibility of probation or parole for first degree murder and life imprisonment for first degree burglary. Following sentencing, O'Brien filed a Rule 29.15 motion, counsel was appointed and filed a timely amended motion. The motion court denied relief without an evidentiary hearing. The court of appeals consolidated O'Brien's post-conviction appeal with his direct appeal, *Rule 29.15(l)*, and affirmed. On O'Brien's motion, the court of appeals transferred these consolidated appeals to this Court, *Mo. Const. Art. V, § 10*, and, deciding the case as though on original appeal, we affirm in part and reverse in part and remand.

I.

O'Brien's principal contention on appeal is that the trial court erred in denying his motion for a judgment of acquittal at the close of the evidence. He claims the State failed to present sufficient evidence to support a conviction for first degree murder. As we are persuaded that he is correct, we address only those other points on appeal that may arise on remand.[1]

A.

A challenge to the sufficiency of the evidence to support a finding of guilt is based in the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia*, 443 U.S. 307, 314–15, 99 S.Ct. 2781, 2786–87, 61 L.Ed.2d 560 (1979). No person may be deprived of liberty, "except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." *Id.* The constitutional sufficiency of the evidence is a question of law to be determined, in the first instance, by the trial court on proper motion by the defendant and again on appeal.

When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the "submissibility" of the case. Therefore, any guilty verdict subsequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. To ensure that the reviewing court does not engage in futile attempts to weigh the evidence or judge the witnesses' credibility, courts employ "a legal conclusion that upon judicial review all of the evidence is to be considered in the light

---

1. O'Brien has not briefed any of the allegations of error raised in his Rule 29.15 motions. To the extent that the claims reach the conviction for first degree burglary, we consider them abandoned and thus affirm the motion court's denial of relief. To the extent O'Brien's claims challenge his conviction for first degree murder, they are rendered moot by our decision reversing that conviction and remanding for a new trial.

**216**

most favorable to the prosecution." *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. Thus, evidence that supports a finding of guilt is taken as true and all logical inferences that support a finding of guilt and that may reasonably be drawn from the evidence are indulged. Conversely, the evidence and any inferences to be drawn therefrom that do not support a finding of guilt are ignored. Viewed in this light, the evidence in this case is set out below.

### B.

Defendant Wayne O'Brien, age 21, lived with his mother, his brother, Michael, and Daniel Blount. On November 25, 1989, at or around 5:30 p.m., O'Brien and Blount were drinking beer at Sam's Place, a neighborhood tavern. Also in the bar was Sanford Wood, a frequent patron of Sam's Place. As with any group of "regulars," everyone in the bar knew everyone else. On this day, Wood was celebrating because he had just come into some money. He bought several rounds of drinks "for the house" and, in doing so, exhibited a large amount of cash.

Drawn by this display, Blount sought O'Brien's help in robbing Wood. According to O'Brien, Blount told him that, if he would just "lure" Wood outside, Blount would "take care of the rest." O'Brien agreed and asked Wood to step outside with him. When they left, Blount exited through the tavern's side door and made his way behind the building and into a narrow walkway, or "gangway," which led out to the street.

After a brief conversation outside, O'Brien turned to walk away and Wood turned to come back into the bar. A witness inside the bar then saw Wood turn and walk in the direction of the gangway as though he had heard someone call his name. O'Brien told the police that he then saw Blount pull Wood into the gangway, knock him down and reach into Wood's pockets.

Several minutes later, O'Brien returned to Sam's Place and asked if anyone had seen Wood. Sam, the owner, said he had not seen Wood but asked O'Brien to check in Tucker's, another tavern on the same block, because Sam wanted to close and

Wood's coat and change were still on the bar. O'Brien left for a couple of minutes, returned to report that he could not find Wood and then left for home.

Sam asked another patron to check again to see if Wood was at Tucker's. The patron did so and, on the way to Tucker's, thought he saw "something" in the gangway but did not stop to see what it was. Returning from Tucker's, however, this patron heard a "gurgling" sound coming from the gangway and stepped in to investigate. There, he found Wood, barely alive. The medical examiner's testimony revealed that Wood's skull had numerous fractures as a result of what were described as "blunt force injuries." Though the medical examiner testified that the injuries were greater than could have been caused by fists alone, the injuries were consistent with having been inflicted by stomping on the victim's head as it lay on the concrete of the gangway.

Meanwhile, O'Brien returned to his house for a short time and then went to a friend's house nearby. Shortly after O'Brien's arrival, Blount showed up, very nervous and excited. After the door was shut and shades drawn, Blount announced that he had "murdered" someone and displayed some cash that he said he had taken. O'Brien's friend testified that Blount's shoes appeared to have blood on them. Blount offered O'Brien some of the money, but O'Brien refused and the two men left to return to their home.

The police, acting on information from the bar's patrons and using a tracking dog, went to O'Brien's house where they arrested him. O'Brien gave a statement to the police and was released. Several days later, upon learning that the police were looking for him again, O'Brien turned himself in at the police station. There, he again gave statements which, though not entirely consistent, contained the essential facts set out above.

### C.

On the strength of this evidence, the trial court instructed the jury on the following charges:

As to Count I—

a. Murder in the first degree

b. Murder in Second degree (felony murder) based on burglary in the first degree

c. Murder in Second degree (felony murder) based on attempted burglary in the first degree

d. Murder in Second degree (felony murder) based on burglary in the second degree

e. Murder in Second degree (felony murder) based on attempted burglary in the second degree

As to Count II—

a. Burglary in the first degree

b. Attempted burglary in the first degree

c. Burglary in the second degree

d. Attempted burglary in the second degree

The jury returned verdicts of guilty on murder in the first degree and burglary in the first degree.

There are three elements to the crime of murder in the first degree: "A person commits the crime of murder in the first degree if he [1] knowingly [2] causes the death of another person [3] after deliberation upon the matter." Section 565.020. In the present case, however, the State argued O'Brien's guilt on the basis that he was an accessory, or an accomplice, to the murder of Woods. On appeal, the State argues that it need only prove that O'Brien aided in Wood's death with the conscious purpose of causing that death. In support of its position, the State cites *State v. Hunter*, 782 S.W.2d 95 (Mo.App.1989). There, the court of appeals held that

> liability as an accomplice for murder first degree requires that one "aid another or others with the conscious object of causing the offense." Proof of dual intent, that is, both an intent to commit murder after coolly and fully reflecting upon it and an intent purposely to promote the commission of murder is not required to establish accomplice liability for murder first degree. Proof of the latter intent is sufficient.

*Id.* at 100. [Citations omitted.] *Hunter* cites *State v. Johns*, 679 S.W.2d 253 (Mo.

banc 1984), *cert. denied*, 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1988), and *State v. White*, 622 S.W.2d 939 (Mo. banc 1981), *cert. denied*, 456 U.S. 963, 102 S.Ct. 2040, 72 L.Ed.2d 487 (1982), in support of this holding.

*Johns*, relying entirely on *White*, affirmed the use of instructions requiring only that the jury find the defendant "acted with the purpose of promoting the commission of first degree murder" and held the failure of the instructions to also require a finding that the defendant "reflected upon this matter coolly and fully" was not error. *Johns*, 679 S.W.2d at 259–60. In *White*, the Court held that "[i]f the Legislature had intended to require an aider to have a dual intent, it would have said so in the statutes." *White*, 622 S.W.2d at 944. The Court went on to conclude that an instruction that required only a finding that the defendant "with the purpose of promoting its commission aided [the other] in committing that offense [first degree murder]" was sufficient. *Id.* at 945–46. The key to *White*, and that which *Johns* and *Hunter* overlooked, is that the Court, in *White*, went on to state that the instruction was proper only insofar as it meant "acting with the conscious object of causing *premeditated* murder, defendant aided in causing capital murder." *Id.* at 946. [Emphasis added.]

▮▮▮ The unique role of premeditation in the law of accomplice liability was clarified in *State v. Ervin*, 835 S.W.2d 905 (Mo. banc 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1368, 122 L.Ed.2d 746 (1993), where this Court held that, pattern instructions to the contrary notwithstanding,

> a first-degree murder instruction premised on accessory liability *must ascribe deliberation to the defendant.* And where the State's theory is accomplice/accessory liability, the jury *must also find that the defendant had a purpose to aid another in the commission of the crime.*

*Id.* at 923. [Emphasis added, citations omitted.] This is so because it is the element of deliberation that sets first degree

murder apart from all other forms of homicide. Both second degree murder and first degree murder require that the act be intentionally done. Only first degree murder requires the cold blood, the unimpassioned premeditation that the law calls deliberation. Only where the defendant himself harbors this most despicable mental state does society inflict its severest punishments. Thus, in *Ervin*, the Court made clear that, while the act of homicide may be imputed to an accessory, the element of deliberation may not be. *Ervin*, 835 S.W.2d at 923. *See also State v. Isa*, 850 S.W.2d 876, 899 (Mo. banc 1993) (first degree murder instruction made "clear to jury that [defendant], herself, 'deliberated' "). Proof that the defendant merely aided another with the purpose of facilitating an intentional killing cannot be sufficient to prove first degree murder and, therefore, *Ervin* clearly overruled *Johns* and *Hunter*. Additionally, to the extent that *White* has been read to require less than proof of the defendant's own premeditation in every case, it too was overruled.

◼ Therefore, for the State to have made a submissible case on first degree murder, it must have introduced evidence from which a reasonable juror could conclude beyond a reasonable doubt that (1) O'Brien committed acts which aided Blount in killing Wood, (2) it was O'Brien's conscious purpose in committing these acts that Wood be killed, and (3) O'Brien committed these acts after coolly deliberating on Wood's death for some amount of time, no matter how short.

The State's case falls far short of this standard. There is evidence that O'Brien aided Blount in the commission of the robbery of Wood and that O'Brien understood and intended that his acts would have that effect. Additionally, there is evidence that Blount killed Wood and that he did so during the course of the burglary. There is no evidence, however, from which any juror could reasonably infer that O'Brien intended Wood's death, let alone that O'Brien coolly deliberated Wood's fate.

◼ It is properly said that it will be presumed that a person intends the natural and probable consequences of his acts. *State v. Hammonds*, 459 S.W.2d 365, 369 (Mo.1970). In a homicide trial, an intent to kill or do serious bodily injury may be inferred from the use of a deadly weapon on some vital area of the defendant's body. *State v. Mallett*, 732 S.W.2d 527, 533 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). So, too, may this "inferred intent" be imputed to an accomplice who shares in another's purpose to kill, *State v. Betts*, 646 S.W.2d 94 (Mo. banc 1983) (defendant's intent to kill inferred from his statement that anyone in house would have to be killed even though an associate actually shot the victim); *State v. Grebing*, 787 S.W.2d 877, 881 (Mo. App.1990) (evidence sufficient to convict defendant as an accomplice to first degree murder where defendant asked another to help "waste" the victim, defendant and accomplice drove off with victim and victim was later found killed by a bullet from defendant's gun), or who knows that his accomplice is armed and that a death is substantially certain to occur. *State v. Simpson*, 778 S.W.2d 705, 707 (Mo.App. 1989) (even if defendant did not shoot victim, he accompanied accomplice as he got a weapon and trailed the victim and shared his motive for the attack); *State v. Oliver*, 791 S.W.2d 782, 788 (Mo.App.1990) (defendant knew brother had a gun, helped hold the victims captive and shared the motive for the attack).

◼ Here, however, there was no deadly weapon used and, for all the evidence tells us, the instruments of Wood's death were Blount's feet. Assuming that Blount killed Wood intentionally, and such is the reasonable inference when the evidence shows that the victim was stomped to death, we hold that the evidence was insufficient to impute this intent to O'Brien. Absent an agreement to kill Wood, or O'Brien's knowledge that Blount was going to commit the robbery using a deadly weapon, there is simply no basis for attributing to O'Brien an intent to kill Wood.

◼ Deliberation, like most elements of mens rea, must ordinarily be proved through proof of the circumstances sur-

rounding the killing. *State v. Gilmore,* 661 S.W.2d 519, 525 (Mo. banc 1983), *cert. denied,* 466 U.S. 945, 104 S.Ct. 1931, 80 L.Ed.2d 476 (1984). Where the defendant commits a murder which, because of the particular method of attack, required some time to complete, this Court has permitted an inference of deliberation. *See, e.g., State v. Antwine,* 743 S.W.2d 51, 72 (Mo. banc 1987) (inference of premeditation supported by the fact that defendant bypassed four separate opportunities to abandon his plan to kill second victim and by fact that defendant, finding himself manacled in police custody, still managed to kill the second victim by stomping him to death), *cert. denied,* 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988); *State v. Grubbs,* 724 S.W.2d 494, 498 (Mo. banc) (facts that victim was bound hand and foot, that he had thirteen broken ribs and that his throat was cut supported an inference of premeditation), *cert. denied,* 482 U.S. 931, 107 S.Ct. 3220, 96 L.Ed.2d 707 (1987); *State v. Sandles,* 740 S.W.2d 169, 177–78 (Mo. banc 1987) (twenty stab and slash wounds provided sufficient basis for inference of deliberation), *cert. denied,* 485 U.S. 993, 108 S.Ct. 1303, 99 L.Ed.2d 513 (1988); *State v. Sturdivan,* 497 S.W.2d 139, 142 (Mo.1973) ("premeditation may be reasonably inferred from the bare hand strangulation of defendant's victim and the subsequent application of the towel for two or three minutes longer to make sure he was dead"), *overruled on other grounds, State v. Anderson,* 515 S.W.2d 534, 542 (Mo. banc 1974).

■ In each of these cases, however, the defendant personally caused the death of the victim. Thus, the circumstances of the killing could reasonably be used to show the defendant's own premeditation. Where the defendant is simply an accessory and does not participate in the act of killing, any inferences which may be raised by the manner in which the victim was killed cannot serve to prove the defendant's premeditation. Where an accomplice has been found guilty of first degree murder, the evidence of the defendant's own actions must be sufficient to support an inference of his having premeditated

upon the eventual death of the victim. *See Isa,* 850 S.W.2d at 898–99 (mother guilty as accomplice to first degree murder where evidence showed she had held daughter from behind while the girl's father stabbed her to death); *State v. Six,* 805 S.W.2d 159, 164–65 (Mo. banc) (detailing defendant's acts which, though charged as accomplice, support an inference of his premeditation on the death of the victim), *cert. denied,* —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991); *State v. Petary,* 781 S.W.2d 534, 538–39 (Mo. banc 1989) (premeditation properly inferred from facts that defendant bought duct tape and plastic gloves, drove accomplice to victims' house, threatened to kill entire family, held family at knife point and kidnapped victim), *vacated on other grounds,* 494 U.S. 1075, 110 S.Ct. 1800, 108 L.Ed.2d 931, *aff'd on remand,* 790 S.W.2d 243 (Mo. banc 1990); *State v. Stewart,* 714 S.W.2d 724, 726 (Mo. App.1986) (evidence supported finding of premeditation where defendant was part of coordinated attack on the victim, allowing accomplices to encircle and stab him).

■ In the present case, the State presented *no* evidence from which a reasonable juror could infer that O'Brien had deliberated upon Wood's death. The only circumstances shown by the State are (1) that O'Brien lured Wood out of the tavern for the purpose of aiding in robbing him, (2) that O'Brien saw Blount grab Wood and drag him into a darkened alley, and (3) that O'Brien then sought to "cover his tracks" by returning to the tavern to "look for" Wood. This evidence comes almost exclusively from O'Brien's own statements to the police and, the State argues, it need not be believed. While this is certainly true, the State fails to offer any contrary evidence in its place.

Moments before the jury retired to deliberate, the State summarized its argument, stating:

> We don't know for sure what the defendant did, but we do know he was involved in this crime. We do know that don't we, because he sits up there and tells you some cocking [sic] bull story

about how it happened, and we know it's not the truth. . . .

Simply because a defendant's self-serving statements may not be credible does not give the jury license to speculate on what happened when there is nothing else to go on. Certainly, the jury was not required to believe O'Brien, but neither was it permitted to invent a version of facts—unsupported by any evidence—that fits the crimes charged. In short, the State failed to produce sufficient evidence from which a reasonable juror could conclude that O'Brien intended the death of Wood after having coolly deliberated upon that outcome. O'Brien's conviction for first degree murder must be reversed.

### D.

 The State's evidence, however, was sufficient to support the submission of the other charges to the jury. O'Brien does not challenge the sufficiency of the evidence to support his conviction for first degree burglary. Similarly, there was evidence from which the jury could have concluded that Wood died in the course of the burglary for which O'Brien was convicted. Therefore, the evidence was sufficient to warrant the submission of the case on felony murder instructions.[2]

 Where a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense. *Cf. Morris v. Mathews*, 475 U.S. 237, 245–57, 106 S.Ct. 1032, 1037–44, 89 L.Ed.2d 187 (1986); *United States v. Franklin*, 728 F.2d 994, 1001 (8th Cir. 1984). Though no examples of this procedure can be found among Missouri cases,

concerns of judicial economy may justify its use in a proper case.

 In the present case, however, this is not possible. Here, the State did not submit, and as discussed above could not submit, this case to the jury on straight second degree murder. Though the case was properly submitted on a charge of second degree felony murder, the jury did not reach the issues raised by that charge because it was improperly allowed to find O'Brien guilty on the charge of first degree murder. Therefore, even though the jury found O'Brien guilty of the first degree burglary, it did not find—because it was not required to find—that Wood's death occurred as a result of that burglary. We decline to infer this critical fact and, therefore, remand this case for a new trial on the charge of felony murder. On the other hand, given that no substantial challenge has been raised concerning O'Brien's conviction for first degree burglary, that conviction is affirmed.

### II.

At oral argument, appellant raised concerns that a remand for a new trial on second degree felony murder in this case would violate double jeopardy. Though neither briefed nor extensively argued, we are compelled to address this issue as it is sure to be raised in the court below.

 Initially, it should be noted that the state constitutional double protections are not invoked. Article I, Section 19, by its express terms, is limited to situations in which the defendant has been "once acquitted by a jury." Here, though his first degree murder conviction is reversed, a jury has not acquitted O'Brien. Therefore, protections from retrial, if any, must stem from the Due Process Clause of the Fifth Amendment to the United States Constitu-

---

**2.** Though O'Brien was charged with first degree murder, an instruction on second degree felony murder as a lesser offense is permissible where there is evidence to support an acquittal of the greater offense and a conviction of the lesser offense. *See* Sections 556.046.1(2) and 565.025.-2(1)(a), RSMo 1986. The legislature's classification of second degree felony murder as a lesser

offense under first degree murder does not mean, however, that it is also a lesser-included offense of first degree murder. As felony murder requires proof of an element—death in the course of a felony—that first degree murder does not, the former cannot be a lesser-included offense of the latter.

tion, made applicable to proceedings in state courts through the Fourteenth Amendment by *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

■ Double jeopardy is not offended by the retrial of a defendant who has succeeded in having his conviction overturned on appeal. *United States v. Ball*, 163 U.S. 662, 672, 16 S.Ct. 1192, 1195–96, 41 L.Ed. 300 (1896). The only exception to this principle is found in *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and its progeny. *See State v. Basham*, 568 S.W.2d 518, 521 (Mo. banc 1978). In *Burks*, the United States Supreme Court held that when a defendant's conviction is overturned on the grounds that the evidence at trial was insufficient to support a finding of guilt, the double jeopardy prohibits the defendant from being retried for the *same* crime. *Id.* 437 U.S. at 12, 98 S.Ct. at 2147–48. This must logically be so, the Court held, because "[i]f the District Court had so held in the first instance, as the reviewing court said it should have done, judgment of acquittal would have been entered and, of course, petitioner could not be retried for the same offense." *Id.* at 10–11, 98 S.Ct. at 2147.

This logic, however, does not apply in the present case. Here, O'Brien is not to be tried again for the same crime but, rather, the lesser offense of second degree felony murder.

In *Burks*, the insufficiency in the government's case went to the defendant's sanity at the time of the crime. *Id.* at 3–4, 98 S.Ct. at 2143–44. Thus, the insufficiency precluded a conviction on any offense. Here, however, the insufficiency extends only to the aggravating element of deliberation. The evidence was sufficient to prove the lesser offense of felony murder even though it requires the additional find-

ing that Wood's death occurred in the course of the robbery. *Burks* merely holds that a defendant should be no worse off for having his acquittal entered on appeal rather than at the trial court.

■ In the present case, O'Brien is no worse off for having to go to the jury on a charge of felony murder as that is exactly what would have happened at his first trial but for the error of the trial court in instructing on first degree murder. Retrial in this case does not violate double jeopardy principles, and we remand for that purpose.[3] *Cf. State v. Parker*, 170 S.W. 1121, 1124 (Mo.1914) (robbery conviction reversed for lack of evidence of force and case remanded for trial on lesser-included offense of larceny).

### III.

■ Finally, we consider the other matters that may arise on retrial. First, O'Brien alleges error in the trial court's allowing Officer Stittum to testify that, at one point in his interrogation of O'Brien, he interrupted O'Brien and told him that he was lying. O'Brien contends that this constitutes impermissible "opinion evidence" as to the ultimate question before the jury and that its admission violated his right to a fair trial. Reading Officer Stittum's testimony and the challenged statement in context, we hold that its admission was not error. The witness was not telling the jury that, in his opinion, the defendant is a liar. Rather, the witness was describing the give-and-take of his interrogation of O'Brien. As the trial court aptly noted in response to O'Brien's "opinion" objection:

Well, I don't think that's the thrust of this. I think he is saying what he said to [O'Brien] at the time he's getting or taking the statement from him, which then I would assume is the reason for or the cause for the additional remarks if there

3. In *State v. Johnson*, 710 S.W.2d 908 (Mo.App. 1986), the court of appeals reversed a conviction for felony drunk driving on the grounds that the State's evidence of prior convictions was insufficient. *Id.* at 911. The court then held that a retrial of the defendant on the lesser-included offense of misdemeanor drunk driving—which does not require proof of prior offenses—was

barred by double jeopardy. *Id.* at 911–12. Because the rationale employed there misconstrued a retrial on remand as a "successive prosecution" or a "prosecution following a conviction," and because we now hold that a defendant may be retried on a lesser offense following a reversal of a conviction of a greater offense, that case is overruled.

are any in the statement and gives color as to why these additional statements or remarks are made.

Second, O'Brien's final allegation of error is a well-worn attack on MAI–CR3D 302.04, the "reasonable doubt" instruction. This attack, misguidedly based on *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), has been repeatedly denied by this Court and we find no reason to depart from our prior holdings. *See State v. Griffin*, 848 S.W.2d 464, 469 (Mo. banc 1993).

## IV.

O'Brien's conviction and sentence on Count II, first degree burglary, are affirmed. Because the State's case is constitutionally insufficient to support a finding that O'Brien purposefully aided in the killing of Wood after coolly premeditating on Wood's death, however, O'Brien's conviction for first degree murder is reversed. The case is remanded for a new trial on the charge of second degree felony murder.

All concur.