**STATE of Missouri, Respondent,**

v.

**Don P. KLUCK, Jr., Appellant.**

No. 21619.

Missouri Court of Appeals,
Southern District,
Division One.

April 30, 1998.

Susan L. Hogan, Appellate Defender, Kansas City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Barbara K. Chesser, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Presiding Judge.

A jury convicted Don P. Kluck, Jr. ("Defendant") of second degree murder, § 565.021 RSMo 1994, and the trial court sentenced him to life in prison. He appeals the conviction, arguing that the trial court committed prejudicial error in allowing a lay witness to testify as to his opinion of Defendant's veracity. We affirm.

Defendant does not challenge the sufficiency of the evidence supporting his conviction. On review, we view the evidence and reasonable inferences therefrom in the light most favorable to the verdict, and do not consider contrary evidence or inferences. *State v. Long,* 955 S.W.2d 951, 952 (Mo.App. S.D. 1997). So viewed, the evidence was that Defendant lived in Joplin with his girlfriend, Kelly Drury, and her children, Tiffany and Justin. On the evening of January 20, 1996, Ms. Drury was visiting with some friends in the kitchen of her home when she decided to go to the grocery store to buy some liquor. Ms. Drury went into the bedroom, where Defendant was sleeping, and got some money out of Defendant's coat. Around 11:00 P.M., she, her friends, and Tiffany went to the grocery store.

Defendant woke up and came into the living room shortly after they returned from the store. Ms. Drury's friends left when Defendant, who apparently walked with crutches, slammed them on the floor. Defendant then entered the kitchen, and began yelling at Ms. Drury, asking her where his money was. After a thirty-minute argument over the money, Defendant hit Ms. Drury in the head with a liquor bottle, causing her head to bleed. Ms. Drury's children ran out of the house, but Tiffany went back inside to help her mother bandage her head. Tiffany had gone back outside and was talking to Justin when the children looked in a window and saw Defendant come out of the bedroom with a gun in his hand. The children then went to the home of a neighbor, John Gabany, and called their father requesting that he pick them up. When Tiffany and Justin later went back home to get their things, Tiffany saw Defendant sitting on a bed with a gun next to him.

Later that morning, Defendant went to Mr. Gabany's house, told him that Ms. Drury had shot herself, and asked him to call an ambulance. Mr. Gabany complied, and the police arrived at Defendant and Ms. Drury's home shortly thereafter. They found Ms. Drury, who had been shot in the head, lying on the kitchen floor. Defendant, who was in the bedroom when the officers arrived, had blood on his clothing and was carrying a gun in the front of his pants. After the officers arrested Defendant and read him his *Miranda* rights, he told them, "Kelly shot herself."

The officers took Defendant to the Joplin Police Department, where he was interviewed by Detective Greg Helms. Initially, Defendant told Detective Helms that Ms. Drury had gone to the bedroom, gotten the gun, and shot herself. When Detective Helms told Defendant he did not believe him, Defendant told Detective Helms that he handed the gun to Ms. Drury and told her to go ahead and shoot herself, which she did. Again, Detective Helms expressed disbelief, and Defendant changed his story again, telling Detective Helms that he and Ms. Drury had struggled over the gun, and that she had overpowered him and then shot herself. De-

tective Helms told Defendant that he also did not find this story believable, and Defendant gave his final version of the events in which he said that he and Ms. Drury had been arguing about her drinking. According to Defendant, he pointed his gun at her head, she grabbed his arm, and he shot her.

■ At trial, Defendant objected to a portion of Detective Helms's testimony, contending that the witness was improperly testifying about his opinion of Defendant's truthfulness. The trial court overruled the objection. In his sole point on appeal, Defendant offers the same argument, complaining that the trial court committed prejudicial error by permitting Detective Helms to give the following testimony:

Q. [by the State] All right. So [Defendant] first told you that Kelly Drury had gone into the—go ahead—that she had taken some money?

A. That she'd gone into the bedroom, got his gun, and shot herself.

Q. All right. And what did you say in response to that, Greg?

A. Well, it just didn't sound believable to me, because he had the gun on him—

BY [DEFENSE COUNSEL]:

I'm going to object as to why he thinks it wasn't believable. That's his speculation and his opinion.

BY THE COURT: Overruled.

Q. All right. You indicated it didn't sound believable to you because he had the gun on him?

A. Right, when the police arrived after the call—after somebody called the police, the police arrived there and he's got the gun on his person.

Defendant contends that Detective Helms's remark was "an improper statement of his opinion that [Defendant] was lying," which prejudiced him "by usurping the jury's function as fact finder as to the ultimate issue in the case, whether [Defendant] was the person responsible for Kelly Drury's death."

■ A trial court has wide discretion in admitting opinion testimony. *State v. Boyd,* 706 S.W.2d 461, 465 (Mo.App. E.D.1986). As Defendant correctly points out, however, the

testimony of lay witnesses must generally be restricted to statements of fact, rather than opinions or conclusions. *Id.* It is also not proper for a lay witness to state a conclusion concerning the ultimate issue for the jury, or to give an opinion as to another person's real or actual state of mind. *State v. Raine,* 829 S.W.2d 506, 510 (Mo.App. W.D.1992). Defendant's basis for his reliance on these cases is his characterization of Detective Helms's testimony as a statement of opinion that Defendant was lying. The State contends that Detective Helms did not testify as to his opinion, but merely recounted what he said to Defendant during their interview.

The State cites *State v. O'Brien,* 857 S.W.2d 212 (Mo.banc 1993), in support of its argument. In *O'Brien,* a police officer who had questioned the defendant testified that he had interrupted the defendant during the interrogation, and told him that he thought he was lying. The defendant argued that this testimony was an improper statement of the officer's opinion. The Missouri Supreme Court disagreed, holding that the officer's statement, taken in context, was simply a description of the "give-and-take" of his interrogation of the defendant. *Id.* at 221.

The instant case is analogous to *O'Brien.* Detective Helms made the statement which is the subject of Defendant's contention of error in the middle of his description of his interview of Defendant, and in answer to a question asking him what he said in response to one of Defendant's versions of the events surrounding the shooting of Ms. Drury. Detective Helms also described the remainder of his interrogation of Defendant. He testified that each time he would tell Defendant that he did not believe him, Defendant would tell him a different version of what occurred. Finally, after being told that Detective Helms did not believe another of those versions, Defendant told him that they had been drinking, they argued about Ms. Drury's drinking, she was sitting at a table in the kitchen, he walked into the kitchen with a gun, he fired a shot into the ceiling and placed the gun at her head, she grabbed his arm, and he shot her. As in *O'Brien,* Detective Helms was not telling the jury that, in his opinion, Defendant was lying. He was instead recounting the "give-and-take" of the interview. We hold that the trial court did not err by allowing him to make this statement, and deny Defendant's point.

The judgment of the trial court is affirmed.

PREWITT and CROW, JJ., concur.