[No. 23779-2-II.   Division Two.   April 14, 2000.]

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH DEMERY, *Appellant*.

*Dino G. Sepe* of Department of Assigned Counsel, for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Michael Lee Sommerfeld, Deputy,* for respondent.

SEINFELD, J. — Kenneth Demery appeals convictions of robbery and kidnapping, alleging, among other things, that the trial court committed prejudicial error when it allowed the State to play his taped interview to the jury without redacting accusatory statements made by the interviewing officer. The officer told Demery that his story "doesn't make sense" and he needs to "start tellin' the truth"; the officer also said that Demery was lying. We conclude that these remarks constituted improper and prejudicial comments on Demery's credibility and guilt. Because the error was not harmless, we reverse and remand.

## FACTS

The State charged Demery with one count of robbery in the first degree while armed with a firearm and three counts of kidnapping in the first degree while armed with a firearm. Demery allegedly used force to obtain $100 from Thomas Kelly; he then forced Kelly and Kelly's two young sons to accompany him to a bank where he forced Kelly to withdraw another $1,000. Kelly alerted bank personnel and officers arrested Demery soon thereafter.

Before trial, the court conducted a CrR 3.5 hearing with regard to a tape recording of Demery's statement to the police. Demery moved to suppress the tape, arguing that it did not comply strictly with RCW 9.73.090 because the

detective noted the starting time as 1057 hours and finishing time as 1010. But the officer who conducted the taped interview testified that he misread his watch and that the correct start time was probably 0957 hours. The trial court admitted the tape.

At trial Demery objected to the following portions of the tape where the interviewing officers accuse Demery of not telling the truth:

> [Detective]: Well, right now you're under arrest for three counts of kidnapping in the first degree and armed robbery in the first degree. And right now your story's not, doesn't make sense.
>
> [Demery]: Okay.
>
> . . . .
>
> [Detective]: . . . You ran from the police and right now nobody's gonna believe your story. Now, you need to start tellin' the truth.
>
> [Demery]: Okay.
>
> . . . .
>
> [Detective]: How have you been treated since you've been here?
>
> [Demery]: I've been treated all right. I mean you guys are lookin' at me, you know, talkin' to me like I'm lying.
>
> [Detective]: Cause you are.

Exhibit 23 at 6, 11. Demery asked the court to redact the offending portions because they amounted to an impermissible comment on his guilt.

The trial court denied the objection, reasoning in part:

> These are not testimonial statements. It is in the context of an interview, and the context of the interview is that the officers at that time are using interview technique to either get the person to change their story or stick with the story that they have already said. And I think the statements are admissible,

since they are not testimonial in nature. It has got do with the interview itself, and not with any testimony that's involved.

Report of Proceedings at 61.

The jury convicted Demery of the robbery count and one of the kidnapping counts, both with firearm enhancements. On appeal, Demery challenges the admission of the tape. He also contends that the trial court erred by granting a trial continuance and by not treating the convictions as the same criminal conduct for sentencing purposes. Finally, he claims that the evidence was insufficient to convict.

## Admission of Demery's Taped Statement
### A. Compliance with RCW 9.73.090

Demery contends the trial court erred in admitting the recording of his police interview because the recording did not indicate the correct start time in accordance with RCW 9.73.090(1)(b)(ii). The State responds that, absent an allegation of police misconduct in the interview procedure, the statute does not require exclusion of the tape merely because there was a misstatement of the start time.

"The 'Privacy Act,' RCW 9.73.090, governs the recording of custodial interrogations." *State v. Mazzante*, 86 Wn. App. 425, 427, 936 P.2d 1206 (1997). RCW 9.73.090(1)(b) states:

> Video and/or sound recordings may be made of arrested persons by police officers responsible for making arrests or holding persons in custody before their first appearance in court. Such video and/or sound recordings shall conform strictly to the following:
>
> (i) The arrested person shall be informed that such recording is being made and the statement so informing him shall be included in the recording;
>
> (ii) The recording shall commence with an indication of the time of the beginning thereof and terminate with an indication of the time thereof;
>
> (iii) At the commencement of the recording the arrested person shall be fully informed of his constitutional rights, and

such statements informing him shall be included in the recording;

(iv) The recordings shall only be used for valid police or court activities.

Demery cites *Mazzante* for the proposition that subsection (ii) above requires strict compliance. But the holding in *Mazzante* regarding "strict compliance" relates to subsection (iii) only. 86 Wn. App. at 429-30.

■ By contrast, the *Mazzante* court noted that substantial compliance with subsections (i) and (ii) is acceptable in limited circumstances. 86 Wn. App. at 428. When the only procedural defect in a taped interview is the absence of a correct start time, the court may admit the tape under RCW 9.73.090 unless there is an allegation of police misconduct that makes the existence of the time announcement a matter of critical importance. *State v. Rupe*, 101 Wn.2d 664, 685, 683 P.2d 571 (1984); *see also State v. Gelvin*, 43 Wn. App. 691, 695-96, 719 P.2d 580 (1986). Here, Demery does not assert police misconduct in connection with the timing of the interview.

Further, the record indicates that the interviewing officer simply misread his watch by an hour when he recited the start time. The officer recited the start time as "1057 hours." Part way through the interview, the officer stated that "[i]t's five after ten now." At the close of the interview, the officer state that "the time is 10:10." As nothing suggests that this slip of the tongue was material and as the taping procedure complied substantially with RCW 9.73.090(1)(b)(ii), the trial court did not err in admitting the recording generally. *Rupe*, 101 Wn.2d at 685; *Gelvin*, 43 Wn. App. at 696.

## B. Commenting on Demery's Guilt

Demery argues that the trial court erred in admitting the portions of the taped interview where the police officers accused him of lying. He contends that this evidence impermissibly invaded the province of the jury.

■ We review a trial court's decision to admit evidence for abuse of discretion, finding such abuse if the courts acted upon untenable grounds or for untenable reasons. *State v. Stenson*, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).

Demery argues that the tape's admission violated the well-settled law that a lay or expert witness's opinion about the guilt or innocence of a defendant is unfairly prejudicial because it invades the jury's independent determination of the facts. *See, e.g., State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987); *State v. Garrison*, 71 Wn.2d 312, 315, 427 P.2d 1012 (1967); *State v. Farr-Lenzini*, 93 Wn. App. 453, 459-60, 970 P.2d 313 (1999); *City of Seattle v. Heatley*, 70 Wn. App. 573, 577, 854 P.2d 658 (1993). The question here is whether the comments made during a taped interrogation are distinguishable from a witness's testimonial statements.

Because this is a question of first impression in this state, Demery and the State rely on cases from other jurisdictions. The State contends that the taped statements are admissible to illustrate the officers' interviewing techniques. *State v. O'Brien*, 857 S.W.2d 212, 221 (Mo. 1993); *State v. Kluck*, 968 S.W.2d 206, 208 (Mo. Ct. App. 1998).

In *O'Brien* and *Kluck*, officers testified about telling the defendant that he was lying during a police interview. *O'Brien*, 857 S.W.2d at 221; *Kluck*, 968 S.W.2d at 207. The reviewing courts found testimony in that context to be probative of police interview techniques. *See O'Brien*, 857 S.W.2d at 221; *Kluck*, 968 S.W.2d at 208. But here, the challenged evidence is the substance of the interview itself—not an officer giving evidence of the interview process. Thus, a jury is more likely to perceive this evidence as the officer's opinion as to the defendant's guilt.

The State also suggests that the statements were analogous to incriminating utterances spoken among co-conspirators. *See, e.g., United States v. Sorrentino*, 72 F.3d 294, 298 (2d Cir. 1995); *United States v. Catano*, 65 F.3d

219, 225 (1st Cir. 1995). We disagree. The challenged statements came forth in a controlled custodial interview and were not necessary to provide context or to aid the jury in understanding the defendant's statement.

In contrast to the State's arguments, we find Demery's citation to a recent Pennsylvania case to be more relevant and persuasive. *See Commonwealth v. Kitchen,* 730 A.2d 513, 1999 Pa. Super. 100. In *Kitchen,* police officers told the defendant "You're lying," or "We know that you're lying," or phrases to that effect in a videotaped interview. 730 A.2d at 521.

The *Kitchen* court held that the trial court must redact accusatory statements from the videotape, reasoning that the statements "were akin to a prosecutor offering his or her opinion of the truth or falsity of the evidence presented by a criminal defendant, and such opinions are inadmissible at trial." 730 A.2d at 521 (citing *Commonwealth v. Henry,* 550 Pa. 346, 706 A.2d 313 (1997)). The *Kitchen* court further noted that such statements "could also be analogized to a prosecutor's personal opinion, either in argument or via witnesses from the stand, as to the guilt or innocence of a criminal defendant, which is inadmissible at trial." 730 A.2d at 521 (citing *Commonwealth v. Peterkin,* 538 Pa. 455, 649 A.2d 121 (1994)).

We agree with the reasoning in *Kitchen.* The impact of admitting accusatory comments on an audio recording is very similar to admitting a live witness's inadmissible personal opinion about a defendant's guilt. *Kitchen,* 730 A.2d at 521.

On the tape here, part way through the interview, the officer stated to Demery, "[a]nd right now your story's not, doesn't make sense." Shortly thereafter, the officer said, "You ran from the police and right now nobody's gonna believe your story. Now, you need to start tellin' the truth." The officer later twice asked Demery if he wanted to stick with his story. And then toward the end of the interview, when Demery commented, "I mean you guys are lookin' at me, you know, talkin' to me like I'm lying," the interviewing officer responded, "Cause you are."

■ The statements amount to accusations that Demery was lying about the crimes under investigation and, as such, indicate the officer's inadmissible opinion as to Demery's guilt. *Kitchen,* 730 A.2d at 521-22; *see also Black,* 109 Wn.2d at 348; *Garrison,* 71 Wn.2d at 315; *Farr-Lenzini,* 93 Wn. App. at 459-60; *Heatley,* 70 Wn. App. at 577; *State v. Carlin,* 40 Wn. App. 698, 703, 700 P.2d 323 (1985). Consequently, the trial court erred in admitting the unredacted tape. *See Kitchen,* 730 A.2d at 522 (affirming trial court's decision to redact statements where officers accused defendant of lying).

■■ It is constitutional error for a trial court to admit an officer's opinion as to the guilt or innocence of a defendant because such an opinion "may influence the factfinder and thereby deny the defendant of a fair and impartial trial." *Carlin,* 40 Wn. App. at 703 (citing *State v. Haga,* 8 Wn. App. 481, 492, 507 P.2d 159 (1973)); *see also Farr-Lenzini,* 93 Wn App. at 465. Such an error is not harmless unless the untainted evidence is so overwhelming that it necessarily leads to a finding of guilt. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985).

Here, because the case against Demery turned primarily on the comparative credibility of the victim and the defendant, we cannot say without a reasonable doubt that the inadmissible comments on the audiotape did not affect the jury. *Farr-Lenzini,* 93 Wn. App. at 465. Consequently, the error was not harmless. *Farr-Lenzini,* 93 Wn. App. at 466.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

ARMSTRONG, C.J., and HOUGHTON, J., concur.

Review granted at 141 Wn.2d 1025 (2000).