**STATE of Missouri, Plaintiff–Respondent,**

v.

**Justin ROBINSON, Defendant–Appellant.**

**No. 26961.**

Missouri Court of Appeals,
Southern District,
Division One.

May 9, 2006.

Motion for Rehearing or Transfer to Supreme Court Denied May 30, 2006.

Application for Transfer Denied
Aug. 22, 2006.

Ellen H. Flottman, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Jayne T. Woods, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Justin Robinson (defendant) appeals convictions, following a jury trial, for murder in the second degree, § 565.021(1),[1] and armed criminal action, § 571.015.1. This court reverses the judgment of conviction and remands the case for new trial.

■ Defendant contends the trial court erred in denying his motions for judgment of acquittal because the evidence was not sufficient to prove his guilt beyond a reasonable doubt. He further argues that the trial court erred in overruling objections to testimony about out-of-court statements by unnamed witnesses for the reason that the statements were hearsay.

In considering claims of insufficiency of the evidence in criminal cases, appellate review is limited to determining if the evidence was sufficient for a reasonable juror to have found the person charged with the crime guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). This court accepts as true all evidence favorable to the state, including favorable inferences drawn from the evidence and disregards evidence and inferences to the contrary. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

*State v. Hudson*, 970 S.W.2d 855, 858 (Mo. App.1998).

Defendant and Randy McKeller were in a car in Sikeston, Missouri, the morning of May 24, 2003. They observed a van in which they had seen Trevor Neal on other occasions. They stopped the van. Defendant and McKeller approached it. Defendant reached inside the van and pulled the keys from the ignition. Neal was a passenger in the van.

Defendant pulled a gun. He told the passengers in the van to get out. Defendant tried to pull Neal from the van. Defendant went to the back of the van. Neal got out the driver's door and ran. The other occupants of the van left the scene. Defendant put down the gun and chased Neal. Defendant caught Neal and pushed him to the ground.

McKeller picked up the gun that defendant left behind. He ran toward defendant and Neal. A shot was fired. Neal was hit. McKeller and defendant ran from the scene of the shooting. McKeller had a

1.  References to statutes are to RSMo 2000.

gun in his hand following the shooting. Defendant testified at trial that McKeller shot Neal. Neal was transported to a hospital where he died the next morning from loss of blood due to the gunshot wound.

Defendant and Randy McKeller were long-time friends. About a week before the shooting, Neal and McKeller had a fight. Neal knocked McKeller unconscious. Defendant testified at trial that he planned to "whoop [Neal's] ass" because of what Neal had done to McKeller.

Defendant filed motions at the close of the state's evidence and at the close of all evidence for judgment of acquittal on the ground, among others, that the evidence was insufficient, as a matter of law, to support guilty verdicts. The motions were denied.

■ Point I contends the trial court erred in denying the motions for judgment of acquittal because "the state's evidence was insufficient to sustain the jury's finding of guilt of murder in the second degree and armed criminal action ... since the evidence failed to prove that [defendant] aided or encouraged Randy McKeller in shooting Travis Neal."

Section 562.041 provides, as applicable to the facts in this case:

> 1. A person is criminally responsible for the conduct of another when
>
> . . .
>
> (2) Either before or during the commission of an offense with the purpose of promoting the commission of an offense, he aids or agrees to aid or attempts to aid such other person in planning, committing or attempting to commit the offense.
>
> . . .

The Western District of this court explained accomplice liability in *State v. McGowan,* 789 S.W.2d 242 (Mo.App.1990).

> Aiders and abettors who act with common purpose with active participants in the crime incur criminal liability by any form of affirmative advancement of the enterprise. *State v. Gannaway,* 649 S.W.2d 235, 239 (Mo.App.1983). Indicia of aiding and abetting include presence at the scene of the crime, flight therefrom and association with others involved before, during and after commission of the crime. *State v. Simpson,* 778 S.W.2d 705, 707 (Mo.App.1989). A defendant's presence at the scene and his companionship and conduct before and after the offense are circumstances from which one's participation in the crime may be inferred. *State v. Gonzalez–Gongora,* 673 S.W.2d 811, 813 (Mo.App. 1984). Proof of any form of participation by a defendant in the crime is sufficient to support a conviction. *State v. Blount,* 734 S.W.2d 309, 310 (Mo.App. 1987).

*Id.* at 243.

In *State v. Howard,* 896 S.W.2d 471 (Mo.App.1995), this district discussed the subject of an accomplice's intent.

> As to intent, the general rule is that "[i]f an accomplice has a purpose to promote an offense, he may be found to have the required culpable state of mind for that offense." *State v. Roberts,* 709 S.W.2d 857, 863 (Mo. banc 1986). To be liable as an aider and abetter, the evidence does not have to establish a defendant's specific knowledge of which particular crime his co-participant will commit. *State v. Workes,* 689 S.W.2d 782, 785 (Mo.App.1985). "[I]f a defendant has embarked upon a course of criminal conduct with others, he is responsible for those crimes which he could reasonably anticipate would be part of that conduct." *Id.* Moreover, since direct evidence probative of the

mental state is rarely obtainable, it may be inferred from the circumstances. *State v. Turner*, 623 S.W.2d 4, 7 (Mo. banc 1981).

*Id.* at 495.

There was evidence that defendant wanted to fight Neal after Neal assaulted Randy McKeller to regain McKeller's "respect on the street." Defendant stopped the van in which Neal was traveling. Defendant ordered everyone out of the van, displayed a gun, and with McKeller's help, attempted to pull Neal from the van. After Neal broke free, defendant chased Neal and tackled him. There was testimony that before Neal was shot, he pleaded for his life saying, "Don't do it like that, man." Both defendant and McKeller were present. One of them told Neal to shut up. A shot was fired. Defendant and McKeller ran away. There was sufficient evidence for the jury to have found defendant guilty, beyond a reasonable doubt, of aiding and abetting Randy McKeller in committing second degree murder.

Section 571.015.1 provides, "Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action...." Section 571.015.4 lists five criminal statutes, violation of which does not support the additional offense of armed criminal action. Section 565.021, the statute that defines murder in the second degree, is not one of the statutes listed. A deadly weapon was used in the crime which defendant aided Randy McKeller in committing. The evidence was sufficient for the jury to have found defendant guilty of aiding and abetting Randy McKeller in the commission of the offense of armed criminal action. *See Howard*, 896 S.W.2d at 496. Point I is denied.

Point II is directed to the trial court overruling a hearsay objection at trial. Point II argues that "[t]he trial court abused its discretion in overruling defense counsel's objection to the testimony of Detective Bobby Sullivan that he learned from 'witnesses' that they overheard 'information where they were talking about shooting [Neal].' " Defendant argues the testimony admitted in evidence was hearsay; that it was "highly prejudicial to [defendant], whose defense was that he did not know that [McKeller] would shoot [Neal], and defense counsel had no opportunity to cross-examine the mystery people."

At trial during the testimony of Bobby Sullivan, who at the time of the offense was an investigator for the Scott County Sheriff's Department, Mr. Sullivan was asked if defendant ever came out and told him about a plan to kill Neal. He answered, "No." The witness said he believed he had gotten all he was going to get from the interview with defendant; that he was satisfied with the statement he had obtained from defendant. The witness was asked what he meant when he said that he got all he was going to get. He answered, "If there were any involvement as far as their planning process, which I mean there was interviews done that people told us there was, they overheard—," at which time defense counsel interposed an objection that the witness was offering hearsay testimony. The trial court overruled the objection.

The prosecuting attorney then asked the following questions and Mr. Sullivan gave the following answers.

Q. [Defense counsel] has asked you about all the investigations that you have done; is that right?

A. Yes.

Q. And in the confession [defendant] gave you, what was—You said all we could get out of him at that time?

A. There was information that during the investigation—

■ Defense counsel again interposed a hearsay objection. The trial court overruled the objection, after which the witness answered, "There was information during one of the interviews, actually a couple of the interviews, to where witnesses told us they overheard information where [defendant and McKeller] were talking about shooting [Neal]. And at one point showed a nine millimeter to one person or talked about a nine millimeter to one person."

A hearsay statement is any out-of-court statement that is used to prove the truth of the matter asserted and that depends on the veracity of the statement for its value. *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). Hearsay statements generally are inadmissible. *State v. Shurn,* 866 S.W.2d 447, 457–58 (Mo. banc 1993), *cert. denied,* 513 U.S. 837, 115 S.Ct. 118, 130 L.Ed.2d 64 (1994). A hearsay statement is admissible, however, when the statement falls within a recognized exception to the hearsay rule. *State v. Spica,* 389 S.W.2d 35, 46(Mo.), *cert. denied,* 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *see, e.g., Hamilton v. Missouri Petroleum Prods. Co.,* 438 S.W.2d 197, 201 (Mo.1969) (excited utterance exception); *Oglesby v. St. Louis Pub. Serv. Co.,* 338 S.W.2d 357, 363 (Mo.App.1960) (exception for statements for purposes of medical diagnosis or treatment); *Stewart v. Sioux City & New Orleans Barge Lines, Inc.,* 431 S.W.2d 205, 210–11 (Mo.1968) (business record exception).

*State v. Sutherland,* 939 S.W.2d 373, 376 (Mo. banc), *cert. denied,* 522 U.S. 871, 118 S.Ct. 186, 139 L.Ed.2d 125 (1997).

The state's argument in opposition to Point II is twofold. It argues that (1) the testimony was not hearsay in that it was not offered to prove the truth of the matter asserted; and (2) that, regardless, the state "opened the door" to the testimony by asserting the officer's investigation stopped short of obtaining information that proved a plan by which defendant could be found to have aided and abetted McKeller.

■ Looking first at the argument that the state "opened the door," the state contends that Sullivan's statement regarding what witnesses told him was offered to show that Sullivan believed there was more to defendant's story than what defendant admitted. The state argues that the out-of-court statements by unidentified witnesses were not offered to prove the statement's contents, but were intended to show that Sullivan had made a thorough investigation; that he was satisfied with the results of his investigation.

The state relies on *State v. Dancy,* 541 S.W.2d 35 (Mo.App.1976), in support of its argument that defense counsel "opened the door" for Sullivan's statements. In *Dancy,* a police officer testified that a witness named Emmett made a photo identification of the defendant in that case. Earlier in the trial, defense counsel had asked another witness if she saw the police officer show photographs to Emmett. On cross-examination, defense counsel asked the police officer if he had shown Emmett photographs to identify. On redirect, the prosecutor asked if Emmett had identified the defendant from the pictures. The officer said he had. The court found that the testimony was admissible. It held:

The prosecutor was properly permitted to ask these questions to counteract the inference that Emmett did not recognize the photographs. If such questioning had been forbidden, the defendant could have obtained an unfair advantage by offering a portion of the facts relating to

this evidence which would ordinarily not have been admissible, and then raising objections to the admission of the remainder of the transaction.

*Dancy,* 541 S.W.2d at 38.

The facts in *Dancy* are not analogous to those in this case. *Dancy* explained:

The trial judge ruled the testimony admissible on the basis that defense counsel had "opened the door" to this testimony by her previous questioning. "Opening the door" occurs when either party introduces part of an act, occurrence or transaction. Then the opposing party is entitled to introduce or to inquire into other parts of the whole thereof in order to explain or rebut adverse inferences which might arise from the fragmentary or incomplete character of the evidence introduced by his adversary, or prove his version of the incident.

*Id.* at 37.

There was no issue in this case concerning what witnesses other than those who testified at trial told the investigating officer. No door was "opened" that permitted the state to introduce testimony as to what third persons had told the officer. The holding in *Dancy* is of no consequence to the facts in this case.

■ The state's argument that the testimony to which defendant objected was not offered to prove the truth of what it asserted likewise fails. The issue for determination was whether defendant embarked on a course of criminal conduct with McKeller. If so, defendant was responsible for crimes that were committed that he reasonably could have anticipated. Mindful that direct evidence probative of mental state is rarely obtainable, the officer's statement that others said defendant and McKeller discussed shooting Neal prior to when the shooting occurred went directly to the substance of the case the state presented to the jury. The statements were directed to the truth of what was said. The statements were hearsay. The trial court erred in overruling defendant's objections to the admission of the investigator's testimony about what other unnamed witnesses had told him.

■ The determination that remains is whether the trial court's error was so prejudicial that it deprived defendant of a fair trial. *State v. McMillin,* 783 S.W.2d 82, 98 (Mo. banc), *cert. denied,* 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990). Defendant was not deprived of a fair trial unless the hearsay evidence that was admitted is outcome determinative. *State v. Robinson,* 111 S.W.3d 510, 514 (Mo.App. 2003). Erroneously admitted evidence is outcome determinative if it so influenced the jury that when considered with all the admissible evidence in the entire record, "there is a reasonable probability that the jury would have reached a different conclusion but for the erroneously admitted evidence." *State v. Roberts,* 948 S.W.2d 577, 592 (Mo. banc 1997), *cert. denied,* 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998).

Defendant's claim of innocence was based on his having abandoned the gun that had been in his possession before he ran after Neal. Had the jury not heard testimony that defendant and McKeller had discussed shooting Neal at an earlier time there is a reasonable probability that a different verdict would have been reached. Point II is granted. The judgment of conviction as to murder in the second degree and armed criminal action is reversed. The case is remanded for new trial.

RAHMEYER, P.J., and LYNCH, J., concur.